IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Marriage of: | ) | |
| | ) | No. 30420-5-III |
| DONALD W. REINI, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DEBRA KAY KYLE-REINI, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |

SIDDOWAY, J. — Donald Reini appeals several terms of the trial court's

dissolution of his 22-year marriage to Debra Kyle-Reini. He challenges (1) the trial

court's denial of his posttrial motions, (2) its alleged reliance on misconduct to penalize

him in disposing of the parties' assets and liabilities, (3) its order that he make a $20,165

transfer payment to Ms. Kyle-Reini, and (4) its award of lifelong maintenance to Ms.

Kyle-Reini.

We conclude that the court's award of maintenance is not adequately explained,

given evidence in the record that would ordinarily weigh against lifelong maintenance in

the amount awarded. We therefore reverse the maintenance award and remand for the

trial court's reconsideration or explanation of its application of the statutory maintenance factors. We otherwise affirm.

FACTS AND PROCEDURAL BACKGROUND

Donald and Debra Reini were married in October 1985. They separated 20 years later for 9 months and then reconciled for a little over a year before permanently separating in August 2007. Mr. Reini petitioned for dissolution thereafter. The parties' two children are emancipated.

Mr. Reini has a high school education. He worked as a Yakima County corrections officer until mid-2005. His gross salary at the county was $3,400 a month and he was provided with medical and dental insurance in addition to contributions to his PERS[1] and Teamsters Union retirement plans. After leaving county employment in 2005, Mr. Reini tried several stints at self-employment: first, delivering trailers as a subcontractor to RV Transport, and later, operating espresso stands that the couple purchased in Quincy in the fall of 2006. Both ventures sustained losses. While managing operation of the Quincy espresso stands, Mr. Reini also became employed at Chinook Lumber, where he earned monthly net income of $2,287 and was provided with health insurance. He was laid off from that position in the fall of 2008.

At the time of trial Mr. Reini was working construction, and had been for the prior

---

[1] PERS is the acronym for the Public Employees Retirement System.

three years. He expected to be laid off and to go on unemployment in or about September. He testified that his employment and unemployment had followed the same pattern for the prior three years: he would be laid off and live on unemployment for three to four months during the winter. Mr. Reini was 51 years old at the time of trial.

Ms. Kyle-Reini graduated from high school and attended college for six months. For the 18 years before trial, she had worked at espresso stands in Yakima that the parties began acquiring in 1993. At the time of trial, she was operating a stand in Yakima that the parties acquired and began operating in 1998. She was involved briefly in operating the stands acquired in Quincy in 2006, but her husband took over management of that location in June or July 2007, before the parties' permanent separation.

Evidence of the parties' income from the espresso stands was sketchy. They did not draw salaries and paid personal expenses from the businesses. Ms. Kyle-Reini's financial declaration filed with the court reported total monthly net income of $2,000 a month.

Neither party paid into Social Security in connection with revenues of the espresso stands that they drew out or applied to personal expenses, even during times they were actively working at the stands. Ms. Kyle-Reini testified they planned on living off of Mr. Reini's Social Security earned during the years he was working for the county and others. Ms. Kyle-Reini was 57 years old at the time of trial.

Poor financial management and resulting bankruptcies left relatively little property

3

for the parties to divide. When Mr. Reini left employment with Yakima County in 2005 he took early distribution of his PERS retirement assets, receiving $52,784. He used most of the funds received to pay off community debt. Only $4,583 remained in a money market account at the time of the separation.

Toward the end of the marriage the parties sold two parcels of property, receiving roughly $96,000. The trial court found that those funds were also largely applied to community debt, although $29,000 was used by Mr. Reini to purchase a motorcycle. Mr. Reini and the parties' son later used the motorcycle as collateral to borrow $9,000, which was used to purchase two jet skis and a trailer. Mr. Reini testified that the trailer and jet skis were later sold in California by the son for $2,500 and that the proceeds were returned to Mr. Reini and deposited in the parties' checking account.

In connection with the purchase of the Quincy espresso stands in late 2006, the parties borrowed money from Summit Leasing, securing it with equipment in the Yakima espresso location. When the Quincy stands failed and Mr. Reini turned them back to the sellers, the parties were left with the Summit debt. In hearings taking place early in the proceeding, the lawyers represented to the trial court that Summit was a hard money lender and that the principal amount of the loan had increased from an initial amount of a little over $20,000 to over $30,000 by the time the petition was filed as a result of a high interest rate and penalties.

Following the parties' permanent separation in 2007 and before trial, both parties

4

filed Chapter 7 bankruptcies. Ms. Kyle-Reini reaffirmed the Summit debt so as not to lose equipment from her Yakima location.

A one-day trial took place in August 2011, four years after the parties' separation. Mr. Reini, who had been represented by counsel earlier in the proceedings, appeared pro se. He offered no exhibits and called no witnesses. His own testimony was largely devoted to his disagreement with some of the entries included in a spreadsheet of assets and liabilities offered by Ms. Kyle-Reini's lawyer.

For her part, Ms. Kyle-Reini offered 32 exhibits containing numerous subparts. Mr. Reini's single objection to the exhibits, which the trial court considered but overruled, was to a picture of an espresso machine that he returned to Ms. Kyle-Reini as required by court order, leaving it in the snow outside her home. His objection was really in the nature of an explanation as to why, given a protective order, he could not take the machine inside.

The trial court took the matter under advisement and issued a written opinion several weeks following trial. It found that the parties owned the following community property assets, having the following values:

| | |
|---|---|
| Household goods and furnishings in wife's possession, together with washer/dryer in Quincy storage unit | $3,500 |

| | |
|---|---|
| Household goods in husband's possession and in storage in Quincy storage unit (other than washer/dryer) | $2,000 |
| On the Go Espresso business ($17,664 value less debt at time of separation) | -$16,070 |
| Firearms and camera | $2,000 |
| Chinook Lumber Roth/401(k) | $1,200 |
| 1997 Ford Ranger | $800 |
| Harley Davidson Fat Boy ($29,000 value less $9,000 debt at time of separation) | $20,000 |
| 2006 Charmac Utility Trailer | $3,500 |
| 2007 Honda Element ($18,640 value less $18,639 debt) | $1 |
| 2007 Harley Davidson Dyna-wide ($15,000 value less $16,459 debt) | -$1,459 |
| Two jet skis and trailer | Unknown |
| 2001 Cameo 5th wheel trailer | $12,500 |
| Marina Fiesta timeshare | $500 |
| Teamsters pension | Unknown |
| Money market balance (remainder of PERS cash out) | $4,327 |
| Tools | $5,000 |
| Residence and three acres ($130,000 value subject to encumbrances) | $12,653 |
| TOTAL (known values) | $50,452 |

Clerk's Papers (CP) at 163-66.

It awarded the community property as follows:

| MS. KYLE-REINI | | MR. REINI | |
|---|---|---|---|
| Household goods and furnishings in wife's possession and washer/dryer | $3,500 | Household goods in husband's possession and in storage in Quincy | $2,000 |
| On the Go Espresso business | -$16,070 | Firearms and camera | $2,000 |
| 1997 Ford Ranger | $800 | Chinook Lumber Roth/401(k) | $1,200 |
| 2007 Honda Element | $1 | Harley Davidson Fat Boy | $20,000 |
| Marina Fiesta timeshare | $500 | 2006 Charmac Utility Trailer | $3,500 |
| ½ Teamsters pension | Unknown | 2007 Harley Davidson Dyna-wide | -$1,459 |
| Money market balance (remainder of PERS cash out) | $4,327 | Two jet skis and trailer | Unknown |
| Residence and three acres | $12,653 | 2001 Cameo 5th wheel trailer | $12,500 |
| | | ½ Teamsters pension | Unknown |
| | | Tools | $5,000 |
| TOTAL (known values) | $5,711 | | $44,741 |

*Id.* The court concluded that the property should be divided equally and to that end awarded a transfer payment to Ms. Kyle-Reini in the amount of $20,165.

Addressing maintenance, the court's letter opinion included the following

7

explanation of its financial considerations:

> A. . . . It is estimated that, while employed [working construction],
> assuming $20/35 hrs per week, [Husband] will gross $3,000 per month. He
> indicated at trial that he expects to receive $1,200 per month during layoffs.
> The court has considered the maintenance factors set forth in RCW
> 26.09.090 and finds that he should pay $500 per month maintenance while
> employed and $250 per month maintenance during period he is
> unemployed and receiving unemployment compensation.

CP at 153.

The court also addressed Social Security entitlement. During trial, Ms. Kyle-Reini

testified that, at age 57, she had 10 years until she would retire for Social Security.

Report of Proceedings (RP) at 174. Her lawyer also pointed out the seven-year age

difference between her and the younger Mr. Reini. The court's letter opinion said the

following about Social Security:

> B. Creating a formula to treat social security benefits in an equitable way is
> difficult because of the age disparity between husband and wife. If and
> when husband begins to receive his benefits he shall pay spousal
> maintenance to the wife in an amount which will equalize the benefits he
> will receive and the benefits she will be entitled to receive as his former
> spouse or as a result of her own earnings, whichever is greater. If he
> continues to be employed while receiving social security this sum shall be
> in addition to his obligation set forth in paragraph "A" above. This portion
> of the maintenance award shall not expire at the end of ten years but will
> continue until the death of either party.

CP at 153. From the last sentence ("This portion of the maintenance award shall

not expire at the end of ten years") it appears that the trial court might have

intended some time limit on the maintenance award, but none was clearly

8

provided and the decree places no end date on the payment of maintenance.

Ms. Kyle-Reini filed proposed findings, conclusions, a decree, and related orders and noted them for presentment. At the presentment hearing Mr. Reini, who had by then retained a lawyer to represent him in this appeal, requested a continuance. He presented three concerns: (1) that the trial court's maintenance order and lien failed to take into consideration the financial hardship on him of making the payment; (2) his discovery, posttrial, that under local court rules he was supposed to have been provided with Ms. Kyle-Reini's exhibits in advance of trial, which had not happened; and (3) information he claimed to have discovered in the prior several days, which he believed "would significantly change the outcome" but needed an opportunity to document and present. RP at 43.

The court denied a continuance. It explained that it was too late for Mr. Reini to raise issues and objections that should have been raised at the time of trial. It signed the findings, conclusions, decree, and related orders in the form presented by Ms. Kyle-Reini.

Before the presentment hearing was adjourned, Mr. Reini told Ms. Kyle-Reini's lawyer and the court that he had learned Ms. Kyle-Reini had purchased a new Honda and asked Ms. Kyle-Reini's lawyer to provide a copy of the purchase agreement and credit application. Ms. Kyle-Reini's lawyer responded that "I might have to write to get that, but we'll get it" and said he would provide it to Mr. Reini once it was obtained. RP at 47.

9

Ten days after the presentment hearing, Mr. Reini filed a motion for a new trial, alleging the local rule violation and misconduct. If a new trial were not granted, the motion asked that the court reconsider its decision on spousal maintenance, arguing that "Mrs. Reini failed to establish at trial that she earns less money than Mr. Reini does, and newly discovered evidence that she recently purchased a new car also undermines the premise that she needs spousal maintenance." CP at 180-81. The motion was supported by Mr. Reini's declaration stating that his monthly net pay during periods of construction employment was only $2,100. It attached portions of Ms. Kyle-Reini's 2009 bankruptcy filings that represented her net monthly income as being $1,970. It stated that Mr. Reini had not yet received the Honda credit and purchase documentation he had requested from Ms. Kyle-Reini's lawyer 10 days earlier, at presentment.

The trial court denied the motion for reconsideration the following day without requesting a response from Ms. Kyle-Reini.

Despite the finality of the proceedings, Ms. Kyle-Reini filed her own declaration a few days later "in order to file with the court what was requested at the time of presentation." CP at 228. Ms. Kyle-Reini's declaration stated she had not had the cash required to buy the 2007 Element on which her lease was expiring, so had instead signed a new lease for a different car. She attached a copy of the credit application documents.

Her voluntary declaration led to yet a further motion by Mr. Reini; this time, a motion for relief from judgment. He pointed to the credit application and credit

10

statement and argued "newly discovered evidence, misrepresentation or misconduct, and irregularity in obtaining an order." CP at 233-34. At a hearing noted by Mr. Reini, the trial court heard from both parties and denied the motion.

Mr. Reini appeals the outcome of trial and the denial of his posttrial motions.

## ANALYSIS

Mr. Reini assigns error to the trial court's (1) failure, in awarding maintenance, to consider factors it was obliged to consider under RCW 26.09.090(a); (2) consideration of acts of misconduct in dividing property and awarding maintenance; (3) imposition of an unfair lien; and (4) denial of his posttrial motions.

We first address denial of the posttrial motions, next consider issues related to the division of the parties' property, and finally consider the court's award of maintenance.

### I. Posttrial Motions

#### A. Motion for a New Trial or Reconsideration

Mr. Reini's first posttrial motion was brought under the authority of CR 59 and, specifically, CR 59(a)(1) (irregularity), CR 59(a)(2) (misconduct), CR 59(a)(3) (accident or surprise), and CR 59(a)(4) (newly discovered evidence).

At the time of this first motion, Mr. Reini only speculated that a continuance and further investigation would yield newly discovered evidence. The newly discovered evidence required to support a CR 59 motion is "[n]ewly discovered evidence, material for the party making the application, which he could not with reasonable diligence have

11

discovered and produced at the trial." CR 59(a)(4). Mr. Reini's declaration in support of the CR 59 motion relied on evidence he admitted was not new: Ms. Kyle-Reini's financial declaration filed with the court in 2007 and schedules I and J to her bankruptcy petition, which were included in exhibits admitted at trial. The only *document* submitted by his declaration that he might not have seen before (his declaration is not clear on this score) was a reaffirmation agreement filed two years earlier in Ms. Kyle-Reini's bankruptcy. But he admitted that even this document revealed nothing new, characterizing it as "consistent with her financial declaration . . . filed with this Court in 2007." CP at 201. His motion was therefore self-defeating on the newly discovered evidence score.

The factual basis for his remaining arguments was that Ms. Kyle-Reini violated Yakima County Superior Court Local Rule 40(e)(1), which requires that "[t]he week prior to trial, counsel for all parties shall provide a copy of their likely exhibits to all counsel. Counsel shall endeavor to agree on which exhibits are admissible." Ms. Kyle-Reini does not deny that she did not comply with the rule.

Mr. Reini could have objected to the exhibits offered by Ms. Kyle-Reini at the time of trial on the basis of her noncompliance with the rule. If he had, the trial court might have denied admission of some of the exhibits. Given the helpfulness to the court of relevant records in dissolution proceedings, however, we doubt the court would have excluded all of her exhibits on the basis of the procedural violation. More likely, it would

12

have afforded Mr. Reini some additional time to review the proposed exhibits and

perhaps a reprieve from the deadline for providing his own. None of the exhibits offered

by Ms. Kyle-Reini were irregular or are claimed to be suspect; they were the type of

financial records typically provided and needed in a dissolution trial.

Once the trial was over, both the rules of evidence and civil rules foreclose Mr.

Reini from complaining about admission of the exhibits. *See* ER 103(a);[2] CR 46.[3] If a

party fails to timely object to errors made at trial, there are no grounds for a new trial.

*See State v. Bauers*, 23 Wn.2d 462, 466-67, 161 P.2d 139 (1945), *overruled on other*

*grounds by Larson v. City of Seattle*, 25 Wn.2d 291, 171 P.2d 212 (1946).

Mr. Reini argues, however, that he is not complaining about the admission of Ms.

Kyle-Reini's exhibits; rather, he contends that if she had complied with the rule he would

then have known that he needed to present exhibits of his own. One flaw in this

---

[2] ER 103(a) provides that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and (1) . . . [i]n case the ruling is one admitting evidence, a timely objection or motion to strike is made, stating the specific ground of objection, if the specific ground was not apparent from the context; or (2) . . . [i]n case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked."

[3] CR 46 provides that "[f]ormal exceptions to rulings or orders of the court are unnecessary; but for all purposes for which an exception has heretofore been necessary it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor; and, if a party has no opportunity to

13

argument for prejudice is that Ms. Kyle-Reini could have complied on the deadline

(parties often do) in which case if Mr. Reini had not yet begun assembling exhibits it

would be too late for him to provide proposed exhibits of his own.

More importantly, his argument reads a purpose into the local rule that we reject.

Essentially, he argues that Ms. Kyle-Reini's noncompliance deprived him of a "head's

up" that he had a right and opportunity to offer exhibits. The local rule does not exist to

afford adversaries a "head's up" on how to prepare for trial. Pro se litigants are bound by

the same rules of procedure and substantive law as attorneys. *Holder v. City of

Vancouver*, 136 Wn. App. 104, 106, 147 P.3d 641 (2006).

The trial court correctly concluded that Mr. Reini waived any remedy for the local

rule violation by failing to raise it at the time of trial. It did not abuse its discretion in

denying Mr. Reini's motion for reconsideration.

## B. Motion for Relief from Judgment

Mr. Reini's second posttrial motion—for relief from judgment—was brought

under the authority of CR 60 and, specifically, CR 60(b)(3) or 60(b)(4). CR 60(b)(3)

provides relief when a party presents newly discovered evidence that by due diligence

could not have been discovered in time to move for a new trial. CR 60(b)(4) authorizes a

trial court to vacate a judgment for "[f]raud . . . , misrepresentation, or other misconduct

---

object to a ruling or order at the time it is made, the absence of an objection does not
thereafter prejudice him."

14

of an adverse party." The standard of review for a decision granting or denying a motion to vacate under CR 60(b) is abuse of discretion. *Lindgren v. Lindgren*, 58 Wn. App. 588, 594-95, 794 P.2d 526 (1990).

By the time of the second motion, Mr. Reini had received Ms. Kyle-Reini's credit application for lease of a new vehicle. The application consists of two parts. The first is a two-page "Credit Application" form, dated "7-1-2011," whose "Employment and Income Information" section is completed to indicate that Ms. Kyle-Reini is self-employed by On the Go Espresso and states, "Monthly Income: $3,000." CP at 230-31. The second is an undated one-page "Applicant's Credit Statement," completed to indicate that Ms. Kyle-Reini is the owner of On the Go Espresso and states "24,000" for "Annual Gross" and "2000" for "Monthly Gross." CP at 232. Both forms are signed by Ms. Kyle-Reini. Mr. Reini argues that the credit application constitutes newly discovered evidence entitling him to relief from the dissolution decree.

Evidence is newly discovered for purposes of CR 60(b)(3) only if it (1) will probably change the result of the trial, (2) was discovered since the trial, (3) could not have been discovered before trial by the exercise of due diligence, (4) is material, and (5) is not merely cumulative or impeaching. *Go2Net, Inc. v. CI Host, Inc.*, 115 Wn. App. 73, 88, 60 P.3d 1245 (2003). A motion based on newly discovered evidence must be denied if any one of the five factors is not satisfied. *Holaday v. Merceri*, 49 Wn. App. 321, 330, 742 P.2d 127 (1987).

15

Three of the factors are not satisfied by Mr. Reini's proposed new evidence. First, as emphasized by Ms. Kyle-Reini, Mr. Reini could have discovered the two-page credit application form by conducting routine dissolution discovery—for example, by requesting production of any financial statements or credit applications completed by his wife. He demonstrated no due diligence in moving the trial court for relief. Second, the three pages taken as a whole are internally inconsistent in reporting Ms. Kyle-Reini's monthly income. Portions are consistent with evidence of the $1,970 or $2,000 a month income that she offered at trial. The inconsistent reference to a $3,000 income amount serves no purpose other than to be used, selectively, to impeach or discredit Ms. Kyle-Reini's trial evidence. Impeachment evidence, even if newly discovered, does not warrant a new trial.

Third, because this was a bench trial and would be a bench trial in the event of retrial,[4] we have a definitive answer as to whether the document would probably change the result of the trial: it would not. Having reviewed the evidence, the trial court ruled, "[T]he Court's not going to retry or set aside anything. As far as the Court is concerned, the matter is concluded and the papers have been signed." RP at 59.

Any one of these three reasons was a sufficient reason for denying the motion. The trial court did not abuse its discretion.

---

[4] RCW 26.09.010(1) (providing that practice in civil actions generally governs dissolution proceedings "except that trial by jury is dispensed with").

Mr. Reini argued alternatively that the $3,000 income figure on the credit application revealed fraudulent conduct or misrepresentation supporting relief from the decree under CR 60(b)(4). The fraud or misconduct required for relief under the rule "must *cause* the entry of the judgment such that the losing party was prevented from fully and fairly presenting its case or defense." *Lindgren*, 58 Wn. App. at 596 (citing *Peoples State Bank v. Hickey*, 55 Wn. App. 367, 372, 777 P.2d 1056 (1989)). The party attacking the judgment must establish the fraud, misrepresentation, or other misconduct by clear and convincing evidence. *Id.*

The trial court had the opportunity to hear the testimony of Mr. Reini and Ms. Kyle-Reini. It was for the trial court to determine, from its familiarity with the parties' evidence at trial, whether the single entry on the credit application presented by Mr. Reini demonstrated clearly and convincingly that the decree had been procured by misconduct. It found that it did not.

Its finding is well supported by the record. Both of the parties testified that in operating the espresso business as a sole proprietorship for over 20 years they had never taken a salary, as such, and had regularly paid personal expenses from business revenues. Given the manner in which they operated, getting a fix on any wage figure, gross or net, would have required accounting work that had apparently never been done. There was no expense line on an income statement, no paycheck, and no form W-2 or 1099 that could be consulted for a reliable figure.

17

There was no evidence that Mr. Reini ever attempted to determine a more reliable wage figure by engaging in discovery of Ms. Kyle-Reini's records or that she frustrated his opportunity for discovery in any way. The trial court did not abuse its discretion by denying Mr. Reini's motion for relief from judgment.

## II. Claimed Consideration of Misconduct

Mr. Reini's remaining challenges are to the trial court's disposition of assets and liabilities and its award of maintenance following the one-day trial. "The trial court is in the best position to assess the assets and liabilities of the parties and determine what is 'fair, just and equitable under all the circumstances.'" *In re Marriage of Brewer*, 137 Wn.2d 756, 769, 976 P.2d 102 (1999) (quoting *In re Marriage of Hadley*, 88 Wn.2d 649, 656, 565 P.2d 790 (1977)). Its distribution of property should be disturbed only if there has been a manifest abuse of discretion. *Id.* Under the manifest abuse of discretion standard, we will affirm the trial court's decision unless no reasonable judge would have reached the same conclusion. *In re Marriage of Landry*, 103 Wn.2d 807, 809-10, 699 P.2d 214 (1985).

Mr. Reini first contends that the trial court erred by considering marital misconduct and punishing him, contrary to the explicit command of chapter 26.09 RCW that the parties' property and liabilities be divided and any award of maintenance be determined "without regard to misconduct." RCW 26.09.080, .090. He points to statements in the trial court's letter opinion that he quit his job as a corrections officer and

18

drew out his PERS retirement, "all unbeknownst to his wife," and that he used $29,000 of proceeds from sale of the parties' property

> to purchase a motorcycle which he put in his son's name. Before the transfer, however, he borrowed $9,000 from a credit union and used the bike as collateral. He purchased two new jet skis and a trailer which his son sold for him in California and for which he received $2,500, probably substantially less than their true fair market value. The jet skis, Ford Ranger, his PERS 2, his Teamster's retirement and the On the Go Espresso business in Moxee were not listed in his bankruptcy schedules. The parties also purchased and ran an espresso business in Quincy. Toward the end of the marriage Mr. Reini moved to Quincy and ran this business. The business failed.

CP at 151-52. Addressing spousal maintenance, the trial court reiterated that "Husband voluntarily quit a job paying a respectable salary with health and retirement benefits and now finds himself earning $20.00 an hour working for J.M. Quincy Construction, working a 35 hour week with no health and retirement benefits and being subject to periodic seasonal layoffs." CP at 153.

We read the cited language to be critical of several actions by Mr. Reini that reflected poor judgment and compromised the parties' financial situation. But when we consider the court's disposition of the parties' assets and liabilities, the court's criticism did not translate into punishment of Mr. Reini. For example, the court rejected Ms. Kyle-Reini's judicial estoppel argument; she had asked that the court exclude from the division of property all of the community property assets that Mr. Reini left off of his bankruptcy schedules. It nonetheless considered all of the assets and divided them equally, using

19

credible evidence of value.

Even if the court had adjusted its distribution on account of Mr. Reini's poor judgments, the "misconduct" that is off limits in distributing property and awarding maintenance does not include a husband's or wife's unwarranted dissipation of marital assets. "[C]onsideration of each party's responsibility for creating or dissipating marital assets is relevant to the just and equitable distribution of property." *In re Marriage of Williams*, 84 Wn. App. 263, 270, 927 P.2d 679 (1996). A trial court may therefore factor into its distribution a party's "negatively productive conduct" that is responsible for creating or dissipating certain marital assets. *In re Marriage of Clark*, 13 Wn. App. 805, 809, 538 P.2d 145 (1975). The clause "without regard to misconduct" "refers to immoral or physically abusive conduct within the marital relationship and does not encompass gross fiscal improvidence, the squandering of marital assets or . . . the deliberate and unnecessary incurring of tax liabilities." *In re Marriage of Steadman*, 63 Wn. App. 523, 528, 821 P.2d 59 (1991) (footnote omitted). A trial court may consider a spouse's negatively productive conduct regarding marital assets when making a just and equitable distribution of property. *Williams*, 84 Wn. App. at 270; *In re Marriage of White*, 105 Wn. App. 545, 551, 20 P.3d 481 (2001); *see also In re Marriage of Nicholson*, 17 Wn. App. 110, 118, 561 P.2d 1116 (1977) (ruling that the trial court had a right to take the husband's concealment of assets into consideration in dividing the property).

The trial court was authorized to consider the conduct at issue. Even so, Mr. Reini

has not demonstrated that the conduct factored in the trial court's decisions. We find no abuse of discretion.

### III. Transfer Payment

Mr. Reini next argues that the trial court abused its discretion when it ordered him to make a transfer payment[5] of $20,165 to Ms. Kyle-Reini because his economic circumstances do not enable him to pay it. "The economic circumstances of [the parties] at the time of the division of property" is one of four statutory factors that the trial court is required to consider in arriving at a just and equitable disposition of the parties' assets and liabilities. RCW 26.09.080(4); *In re Marriage of Rockwell*, 141 Wn. App. 235, 242-43, 170 P.3d 572 (2007).[6]

Mr. Reini argues that providing for the transfer payment to equalize the distribution was unfair because he has virtually nothing in his bank account, lives paycheck to paycheck, and could not generate the payment even by selling all his assets.

The economic circumstances of the parties is only one of the statutory factors to be considered by the court. Standing alone, it does not support favoring Mr. Reini over Ms. Kyle-Reini. Both of them face difficult economic circumstances following their

---

[5] The trial court used the term "equitable lien" but we prefer the term transfer payment when referring to a payment obligation, as distinguished from a claim against particular assets.

[6] The other three factors are the nature and extent of the community property, the separate property of the parties, and the duration of the marriage. RCW 26.09.080.

respective bankruptcies and divorce. And Mr. Reini's economic circumstances should not be viewed as narrowly as his bank account balance and wages as of the day of trial; they include the fact that he was only 51 years old at the time and has held better-paying, nonseasonal employment in the past.

They also include the court's distribution to him of $44,741 in community property having a known value—this, as compared to only $5,711 in known value distributed to Ms. Kyle-Reini.[7] As the trial court observed, this was a long-term marriage. It was not unreasonable for the court to view an equal division of property, made equal through a transfer payment, as appropriate.

The trial court's disposition must be evaluated by considering all of the factors applied to both parties, not just one factor applied only to Mr. Reini. He has not demonstrated an abuse of discretion.

---

[7] Mr. Reini argues in passing that he had cashed out the Roth/401(k) by the time of the decree and the jet skis and jet ski trailer had been sold, yet they were accounted for as assets distributed to him. Br. of Appellant at 11. The Roth/401(k) existed at the date of separation, which was the valuation date set by the court. It was cashed out by Mr. Reini in violation of a restraining order. RP at 158-59. As to the jet skis and trailer, the trial court doubted the credibility of Mr. Reini's testimony that these new items, purchased for $9,000, were sold shortly thereafter for $2,500; Mr. Reini also failed to demonstrate that the proceeds were deposited to a community account. If we assume that the transfer payment was intended to result in an exact 50/50 split of property by value, the trial court implicitly attached only a $1,300 value to the jet skis and trailer. Although the trial court was incapable of ordering transfer of assets that Mr. Reini no longer possessed, it was within its authority to account for their value in its separation-date based disposition of assets and liabilities.

IV. Maintenance Award

Mr. Reini finally challenges the maintenance award to Ms. Kyle-Reini, arguing that the trial court's award of lifelong maintenance failed to consider Ms. Kyle-Reini's financial resources and ability to meet her needs independently; her existing employment in a position appropriate to her skill, interests, style of life, and other circumstances; and Mr. Reini's inability to meet his needs and financial obligations while paying the maintenance award. RCW 26.09.090(1)(a), (b), (f). These are three of six statutory factors that the trial court is required to consider in determining whether to award maintenance.[8]

The purpose of spousal maintenance is to support a spouse until the spouse becomes self-supporting. *In re Marriage of Luckey*, 73 Wn. App. 201, 209, 868 P.2d 189 (1994). What is a reasonable length of time for a divorced spouse to become employable and provide for his or her own support, so that maintenance can be terminated, depends on the particular facts and circumstances of each case. *In re Marriage of Spreen*, 107 Wn. App. 341, 348, 28 P.3d 769 (2001) (citing *Endres v. Endres*, 62 Wn.2d 55, 58, 380 P.2d 873 (1963)). Lifelong awards have been approved, but in circumstances where it is clear that the party seeking maintenance will not be able to contribute significantly to his

---

[8] The others are the standard of living established during the marriage, the duration of the marriage, and the age, physical and emotional condition, and financial obligations of the spouse seeking maintenance. RCW 26.09.090(1)(c), (d), (e).

or her own livelihood. *In re Marriage of Sheffer*, 60 Wn. App. 51, 56-58, 802 P.2d 817 (1990).

An award of maintenance not evidenced by a fair consideration of the statutory factors constitutes an abuse of discretion. *Spreen*, 107 Wn. App. at 349. When a court makes a decision that the legislature has required be based on consideration of specific factors, written findings on those factors are preferred, but a trial court does not err by failing to enter findings if substantial evidence was presented on each factor and the court's oral opinion and written findings reflect it considered each. *In re Marriage of Horner*, 151 Wn.2d 884, 895-96, 93 P.3d 124 (2004) (addressing factors required to be considered in child relocation decisions).

Here, the trial court's findings of fact state only that "[m]aintenance should be ordered because the Wife has the need and Husband has the ability to pay." CP at 157 (Finding of Fact 2.12). Its letter opinion and findings and conclusions refer to the parties' long-term marriage and Mr. Reini's earnings during periods of employment and unemployment. But both are silent when it comes to Ms. Kyle-Reini's relative resources, education or training, and ability to be self-supporting.

Mr. Reini presented little evidence and he may not rely on the credit application that the trial court refused to accept as newly discovered evidence. Even so, the record contains evidence that is germane and was not weighed by the trial court. It establishes that Ms. Kyle-Reini managed, by working long hours in the several years the divorce was

24

pending, to retire the Summit obligation. It establishes that while Mr. Reini was unable to make a success of the Quincy stands, Ms. Kyle-Reini operated the Yakima location solvently for many years and was sufficiently confident of its prospects when filing bankruptcy in 2009 to affirm and assume the Summit debt. She did not present evidence at trial that she needed training for a new or different career. Inasmuch as she supported herself for the four years the dissolution was pending, it would appear no further time is required for her to acquire education or training. While the evidence of the parties' income histories at trial is not as concrete as it could be, there is no evidence of a substantial earning disparity that would warrant lifelong maintenance for the purpose of equalizing the parties' standard of living.[9]

Given these questions raised by the evidence and the limited explanation of the trial court's reasoning, we cannot be confident that it gave full consideration to the statutory factors. We reverse the maintenance award and remand so that the court may reconsider or at least explain its consideration of the three factors Mr. Reini claims were overlooked as well as whatever other factors the court deems relevant.

Mr. Reini and Ms. Kyle-Reini both seek attorney fees and costs on appeal. Under

---

[9] The evidence established that Mr. Reini's income from his job as a construction worker is $3,000, gross, when he is working and $1,200 when collecting unemployment; assuming eight to nine months on and three to four months off, his annual earnings are $28,800 to $30,600. According to Ms. Kyle-Reini's financial declaration, her net monthly income is $2,000 for a net annual income of $24,000.

No. 30420-5-III
*In re Marriage of Reini*

RCW 26.09.140, we have discretion to award attorney fees after considering the financial resources of both parties and the parties' ability to pay. *In re Marriage of Robertson*, 113 Wn. App. 711, 716, 54 P.3d 708 (2002). Intransigence is an additional basis for awarding fees on appeal, *see In re Marriage of Mattson*, 95 Wn. App. 592, 605, 976 P.2d 157 (1999), and Ms. Kyle-Reini urges it as an alternative basis for her fee request. We do not find intransigence and decline to award fees and costs to either party.[10]

We reverse the trial court's maintenance award and remand for consideration of the maintenance factors provided by RCW 26.09.090. We otherwise affirm.

A majority of the panel has determined that this opinion will not be printed in the Washington Appellate Reports but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Korsmo, C.J.

_____
Moreno, J.P.T.

_____

[10] We deny Mr. Reini's motion to strike Ms. Kyle-Reini's affidavit as untimely.