[No. 14276-1-III.   Division Three.   November 28, 1995.]

*In the Matter of the Marriage of* ROBERT E. TERRY,
*Respondent, and* IRIS H. TERRY, *Appellant.*

*Ronald K. McAdams* and *McAdams, Ponti & Wernette, P.S.,* for appellant.

*Marshall S. Wolfram* and *Minnick-Hayner, P.S.,* for respondent.

SCHULTHEIS, J. — After over twenty-four years of marriage, Iris and Robert Terry were granted a decree of dissolution. Although the couple resided together during the marriage, the trial court found that they led separate existences for most of those years. Accordingly, the court treated the marriage as short-term and limited Iris' award of maintenance to one year. She appeals, contending the court abused its discretion in awarding maintenance, in dividing the marital property and in failing to award her attorney fees. We reverse and remand.

Iris and Robert were married in 1969. The marriage was Robert's first, Iris' second. Her first husband had died the year before. She brought into her marriage with Robert a $6,385 lump sum payment terminating monthly payments from the United States Department of Labor for her first husband's death. She also brought trust funds totaling $9,422, a new station wagon and furniture. Robert brought to the marriage two older cars, a trailer, a snowmobile and some debts.

The couple maintained only a marginal standard of living during the twenty-four years of their marriage. Due to lifelong back problems, Iris rarely worked outside the home and never pursued her education beyond obtaining a GED and taking a secretarial course in 1980. Robert, who had completed two years of college, held several jobs during the marriage, finally securing a full-time position as a garbage truck driver and a part-time job as a volunteer fireman. In recent years, he had taken on odd jobs for additional income. At the time of trial, Robert was fifty-two and had a gross income of around $1,926 per month. Iris was almost fifty-eight and had a gross income of $100 per month.[1]

After the first three years of marriage, Iris and Robert occupied separate bedrooms. Robert testified the couple lived essentially a separate existence from that time on. Iris agreed they had a "marriage of convenience," although she testified the deterioration in the relationship occurred slowly over a long period of time.

In 1985, Iris' stepmother and father opened an account for her and deposited $15,000. It was her understanding that they wanted her to keep the account secret and to use the money if Robert deserted her. By the time of trial, this account held $7,300. Iris opened two other accounts (of undetermined amounts) around 1991 and also kept their existence secret. All these funds and other gifts from her parents were used to buy herself a car, purchase the family home, install a new roof and carpeting for the home, and make house repairs. Robert either did not ask where the money for these purchases and improvements came from or was satisfied when she told him she had inherited some of it.

Robert moved out of the house and filed for dissolution in September 1993. In the temporary order filed a month later, Robert was ordered to pay Iris maintenance of $600 per month and to give her possession of the home. The

---

[1]Iris was working eight hours a month as a secretary for her church.

final decree, filed in July 1994, awarded Robert his retirement benefits with the city sanitation and fire departments and the personal items in his possession. Iris received the family home, $600 per month maintenance for twelve months, medical insurance premiums maintained by Robert for twelve months, and the personal items in her possession. The community debt was evenly divided and each party was ordered to pay his or her own attorney fees and costs.

On appeal, Iris contends the court should have: (1) awarded her long-term maintenance, (2) divided the retirement assets equally, and (3) granted her reasonable attorney fees and costs.

■ ■ An award of maintenance is within the broad discretion of the trial court. *In re Mathews*, 70 Wn. App. 116, 123, 853 P.2d 462, *review denied*, 122 Wn.2d 1021 (1993). We will find an abuse of discretion only if the trial court bases its award or denial of spousal maintenance on untenable grounds or for untenable reasons. *In re Wright*, 78 Wn. App. 230, 237-38, 896 P.2d 735 (1995). The paramount concern is the economic condition in which a dissolution decree leaves the parties. *In re Washburn*, 101 Wn.2d 168, 181, 677 P.2d 152 (1984).

RCW 26.09.090(1) provides that the court may grant a maintenance order in an amount and for a period of time the court deems just. *In re Luckey*, 73 Wn. App. 201, 209, 868 P.2d 189 (1994). The court must consider all relevant factors, including the financial resources of the parties after dissolution; their abilities to meet their needs independently; the duration of the marriage; the standard of living they established during marriage; their ages, health and financial obligations; and the ability of one spouse to pay maintenance to the other. RCW 26.09.090(1)(a), (c), (d), (e), (f); *Mathews*, 70 Wn. App. at 122-23. The court here based its twelve-month award of maintenance on its findings that the marriage had been "defunct" for the last ten to twenty-one years and that Robert had no ability to pay long-term maintenance.

The term "defunct" marriage is most often used to describe a marital community living "separate and apart" for the purposes of RCW 26.16.140, which provides that a husband's and wife's earnings and accumulations made while living apart shall be treated as separate property in dissolution. *See, e.g., In re Short,* 125 Wn.2d 865, 871, 890 P.2d 12 (1995); *In re Nuss,* 65 Wn. App. 334, 344, 828 P.2d 627 (1992). Assets acquired during marriage are presumed community property, but this presumption may be rebutted by evidence that both parties "exhibited a decision to renounce the community, with no intention of ever resuming the marital relationship." *Oil Heat Co. of Port Angeles, Inc. v. Sweeney,* 26 Wn. App. 351, 354, 613 P.2d 169 (1980), *quoted in Nuss,* 65 Wn. App. at 344. Actual physical separation is not necessary so long as the parties' conduct indicates their community has been dissolved. *Aetna Life Ins. Co. v. Bunt,* 110 Wn.2d 368, 372, 754 P.2d 993 (1988); *Nuss,* 65 Wn. App. at 344; *Aetna Life Ins. Co. v. Boober,* 56 Wn. App. 567, 571-72, 784 P.2d 186 (1990); *Peters v. Skalman,* 27 Wn. App. 247, 252-53, 617 P.2d 448, *review denied,* 94 Wn.2d 1025 (1980).

■ After review of the record before us, we find that the trial court erred in treating the Terry marriage as short-term. Although the court noted that the couple had no children, apparently had no sexual relations, had separate bank accounts and seldom did things together, the fact remains that the couple continued to live together as husband and wife for twenty-one years after they moved into separate bedrooms. Both parties undoubtedly benefited from the relationship: Iris' separate funds provided upkeep on the home and cars and Robert's income allowed Iris to remain home. This behavior does not exhibit an unequivocal intention to renounce the marriage. *See Oil Heat Co.,* 26 Wn. App. at 354.

Accordingly, we reverse and remand for a determination of the necessity for a maintenance award. Specifically, we direct the trial court to treat this marriage as long-term and to consider all other relevant factors of

RCW 26.09.090 as well as the disposition of the community assets and debts. *Washburn*, 101 Wn.2d at 181. Maintenance may be utilized to more nearly equalize the postdissolution economic conditions of the parties, especially considering Robert's superior earning capacity. *In re Sheffer*, 60 Wn. App. 51, 57, 802 P.2d 817 (1990).

■ In light of our determination that this was a long-term marriage, we must also reverse the trial court's division of the marital property. The trial court, assuming this to be a short-term marriage, attempted to return the parties to their premarital relative financial conditions. On remand, the court must seek an equitable and just distribution considering all relevant factors, including the nature and extent of the community and separate property (Iris' separate funds as well as Robert's retirement funds), the duration of the marriage, and the economic circumstances of the parties at the time of dissolution. RCW 26.09.080; *In re Bulicek*, 59 Wn. App. 630, 636, 800 P.2d 394 (1990). As in the calculation of maintenance, the paramount concern must be the economic condition in which the dissolution decree leaves the parties. *Washburn*, 101 Wn.2d at 181; *In re Stenshoel*, 72 Wn. App. 800, 812-13, 866 P.2d 635 (1993).

■ Our decision to remand for a redetermination of the property division and maintenance requires us to reserve the issue of attorney fees. The trial court has discretion under RCW 26.09.140 to award attorney fees after considering the financial resources of both parties. *Stenshoel*, 72 Wn. App. at 813. A party to a dissolution is not entitled to attorney fees as a matter of right. *Bulicek*, 59 Wn. App. at 639. The court must determine whether one party has a need and the other party has the ability to pay. *Stenshoel*, 72 Wn. App. at 813; *Bulicek*, 59 Wn. App. at 639. If, after considering all relevant factors, the trial court determines Iris has a need for an attorney fees award and Robert has the ability to pay, she will be entitled to the fees and costs incurred on appeal as well. *Stenshoel*, 72 Wn. App. at 813.

Reversed and remanded.

THOMPSON, C.J., and SWEENEY, J., concur.