[No. 14648-1-III.   Division Three.   December 5, 1996.]

*In the Matter of the Marriage of* GLENDA LEE WILLIAMS, *Respondent,* and STANLEY JAMES WILLIAMS, *Appellant.*

264

*Richard F. Monahan* and *Roach, Monahan & Lowry,* for appellant.

*Ronald K. McAdams* and *McAdams, Ponti & Wernette, P.S.,* for respondent.

SCHULTHEIS, A.C.J. — In the decree dissolving her 27-year marriage, Glenda Williams received the family home, approximately one-half of the community possessions, one-half of the community debts, and maintenance equal to one-half of her husband's retirement. Along with his portion of the community possessions, debts and retirement, Stanley Williams received his share of the equity in the family home. Several issues are raised by Stanley on appeal, most notably his insistence that the trial court improperly based the maintenance award on retirement benefits that are not currently accessible and that include four years of premarital military service. Stanley also contends Glenda's gambling dissipated the community assets. We affirm.

Glenda filed for divorce in August 1993 and Stanley moved out of the family home in October 1993. The

couple's two children were emancipated, although still living at home. Stanley, who has a high school degree, was a full-time street crew supervisor for the city of Walla Walla. His gross salary was about $3,000 a month. Glenda, who also has a high school degree, was holding down three jobs until just before trial: a full-time position with a medical clinic, a weekend job at K-Mart, and a seven-days-a-week night job caring for an elderly woman. Her total salary for these jobs grossed about $2,500 a month. One week before trial, Glenda lost her clinic job, so she was making only $1,300 at the time of trial.[1]

Trial began in May 1994. Stanley was entitled to retire in April 1994, after 30 years with the city, but he decided to continue working. The trial court awarded Glenda maintenance equal to one-half of Stanley's total retirement accrued during the marriage, including four years of military service retirement accrued before marriage.[2] This award was characterized by the court as a property settlement rather than true maintenance, representing what Glenda would have received if Stanley had retired in April. The court directed him to elect a joint and survivor annuity option in his retirement so that she would continue to receive benefits after his death.

Evidence at trial showed Glenda had spent anywhere from $400 a month (her estimate, taking into account winnings as well as losses) to $2,400 a month (his estimate, based on checks cashed at taverns and cash advances on credit cards) gambling during the latter years of their marriage. The trial court found that $10,000 to $12,000 were spent on gambling, but refused to characterize the gambling costs as dissipation of the marital assets because gambling is legal and encouraged in Washington. The court found that money spent on gambling was no differ-

[1]Before the dissolution proceedings were over, Glenda found another clinic job, at a lower salary, but expected to earn as much as she had in her former job within a year.

[2]The city's retirement system permitted the military service time to be included in computing retirement benefits.

ent from money spent on any other entertainment and declined to adjust the property settlement to reflect it.

In the final decree, Glenda received property valued at approximately $71,000 plus one-half of her husband's retirement and her own social security benefits. Stanley received property valued at approximately $74,000 plus the rest of his retirement and social security benefits. Glenda's share of the community debts was about $19,600, and Stanley's share was about $22,100. Most of the debt assigned to Glenda related to home improvement loans, while most of the debt assigned to Stanley related to credit card balances arguably tied to Glenda's gambling. Stanley was directed to pay Glenda monthly maintenance of $703, representing her portion of his retirement benefits, terminating upon his retirement or the death of either party. Each party was directed to pay his or her own attorney fees. Stanley's motion for reconsideration was denied and this appeal followed.

Stanley first contends the court erred in awarding maintenance. He asserts Glenda does not qualify for a maintenance award because she is capable of meeting her needs independently. Even if the maintenance award is treated as a property settlement, he argues, it is not just or equitable because it is based on retirement benefits that are not now available and that include premarital military benefits.

We begin by noting that trial court decisions in marital dissolution proceedings are rarely changed on appeal. *In re Stenshoel*, 72 Wn. App. 800, 803, 866 P.2d 635 (1993). The party who challenges a maintenance award or a property distribution must demonstrate that the trial court manifestly abused its discretion. *In re Washburn*, 101 Wn.2d 168, 179, 677 P.2d 152 (1984); *In re Terry*, 79 Wn. App. 866, 869, 905 P.2d 935 (1995).

It is within the trial court's discretion to grant a maintenance order in an amount and for a period of time the court deems just. RCW 26.09.090(1). Some of the factors the court must consider include: the postdissolution

financial resources of the parties; their abilities to meet their needs independently; the duration of the marriage; the standard of living they established during their marriage; their ages, health and financial obligations; and the ability of one spouse to pay maintenance to the other. RCW 26.09.090(1); *Terry*, 79 Wn. App. at 869. The court's paramount concern is the economic condition in which the dissolution decree leaves the parties. *Washburn*, 101 Wn.2d at 181.

Here, the court found that the marriage was long term and that Stanley earned more than twice what Glenda earned, assuming she cut back to "a normal one job situation." More important, the court did not attempt to justify Glenda's monthly payments as maintenance, but rather as a property settlement. In the court's words:

> The award of maintenance is based upon the proposition that, if husband retired, wife would be receiving immediately a portion of his state retirement pension. The intent is to award her now maintenance in a sum equal to one-half of what she would receive, based upon Option 2 (joint and survivor annuity).

Unlike typical maintenance awards, the payments do not terminate upon Glenda's cohabitation or marriage, but only upon the death of either party or Stanley's retirement. As the court stated in the presentment hearing: "This maintenance is basically property settlement. By calling it maintenance he gets to deduct it for income tax purposes and doesn't have to pay the tax on it."

Further supporting the fact that this award is actually a property settlement is its tie to a specific property allocation: Stanley's vested and matured pension benefits. *In re Hurd*, 69 Wn. App. 38, 45, 848 P.2d 185 (deferred earnings not subject to forfeiture are "vested"; deferred earnings that may be received immediately are "matured"), *review denied*, 122 Wn.2d 1020 (1993).

The trial court properly included Stanley's pension benefits—actually deferred compensation—in the

community's assets to be divided. *In re Chavez*, 80 Wn. App. 432, 436, 909 P.2d 314, *review denied*, 129 Wn.2d 1016 (1996). Maintenance was computed by determining the value of the pension at the time it matured in April 1994 ($1,406) and dividing it by two. When Stanley actually retired, Glenda was to receive one-half of the amount representing the number of months the couple was married divided by the total number of months Stanley worked. This is the approved method of dividing retirement benefits and pensions. *Id.* Although the four years of premarital military benefits were, strictly speaking, Stanley's separate property, they had been credited to his city retirement plan. At any rate, the status of property as community or separate is not controlling. *In re Olivares*, 69 Wn. App. 324, 329, 848 P.2d 1281, *review denied*, 122 Wn.2d 1009 (1993). Even if the trial court mischaracterizes the property, the allocation will be upheld as long as it is fair and equitable. *Olivares*, 69 Wn. App. at 330.

▮ Whether we review the award of monthly payments here as maintenance or as a property settlement, the ultimate question is whether, under the circumstances, the award is just. RCW 26.09.080, .090; *In re Bulicek*, 59 Wn. App. 630, 633, 636, 800 P.2d 394 (1990). See also *In re Barnett*, 63 Wn. App. 385, 388, 818 P.2d 1382 (1991) (when the assets are insufficient to equalize the postdissolution economic positions of the parties through a property division alone, a supplemental award of maintenance is appropriate). Distribution of the marital assets and liabilities is discussed below. In terms of monthly salary, however, the maintenance payments reduce Stanley's gross income to around $2,300 and raise Glenda's gross income to anywhere from around $3,200, assuming she keeps all three jobs, or around $1,900, if she reduces her work load to one full-time job. The trial court intended to provide Glenda enough income to quit the two part-time jobs. All in all, we agree with the *Bulicek* court that provision of maintenance until retirement benefits are available was "a thoughtful resolution of the maintenance and pension

issues that allows . . . a continuous stream of income."
*Bulicek*, 59 Wn. App. at 635.

Stanley next contends the trial court divided the marital property and debts inequitably. In particular, he contends Glenda's gambling debts should have been treated as dissipation of the marital assets. He also argues the value of his accrued vacation and sick leave should not have been included in his assets, because he may end up using both rather than cashing them out.

As with maintenance, the trial court's paramount concern when distributing property in a dissolution is the economic condition in which the decree leaves the parties. *Terry*, 79 Wn. App. at 871. The court's "just and equitable" distribution requires consideration of all relevant factors, including the separate and community properties and the duration of the marriage. RCW 26.09.080; *Bulicek,* 59 Wn. App. at 636. Here, the court divided the total assets and liabilities of the parties roughly equally. Stanley contends, however, certain liabilities and assets should not have been included.

Washington courts recognize that consideration of each party's responsibility for creating or dissipating marital assets is relevant to the just and equitable distribution of property. *In re Steadman*, 63 Wn. App. 523, 527, 821 P.2d 59 (1991); *In re Clark*, 13 Wn. App. 805, 808-09, 538 P.2d 145, *review denied*, 86 Wn.2d 1001 (1975). The trial court has discretion to consider whose "negatively productive conduct" depleted the couple's assets and to apportion a higher debt load or fewer assets to the wasteful marital partner. *Clark*, 13 Wn. App. at 809. In this case, the trial court considered evidence that Glenda expended large sums on gambling at least from early 1990 until she filed for divorce. It also considered the fact that gambling is legal, even encouraged, in Washington and that Glenda "brought in a substantial amount of income" by working at three jobs. Analogizing to the situation where one party buys an expensive car or boat that immediately loses value, or buys a race horse that drops

dead, the court decided the $12,000 lost in gambling was more in the nature of entertainment costs than dissipation of assets. The court also found that although Stanley may not have known Glenda was withdrawing gambling cash from several credit cards, he had access to the cards and knew "approximately what was going on." These findings are adequately supported by the record.[3]

Stanley cites cases from Illinois and Wisconsin that establish gambling may be considered a dissipation of marital assets. *In re Hagshenas*, 234 Ill. App.3d 178, 600 N.E.2d 437 (1992); *In re Smith*, 114 Ill. App.3d 47, 448 N.E.2d 545, 41 A.L.R.4th 406 (1983); *In re Anstutz*, 112 Wis.2d 10, 331 N.W.2d 844 (Ct. App. 1983). Illinois, in particular, legislated against dissipation, loosely defined as "where a spouse uses marital property for his or her own benefit and for a purpose unrelated to the marriage at a time when the marriage relationship is in serious jeopardy." *Smith*, 448 N.E.2d at 548. Washington courts, on the other hand, focus instead on "whose labor or negatively productive conduct was responsible for creating or dissipating certain marital assets." *Clark*, 13 Wn. App. at 809. Balancing Glenda's extra income against her excessive spending, the court here decided to include the gambling related debts in the community's total liabilities. We do not find this an abuse of discretion.

Stanley's argument that the trial court erred in including his vested vacation and sick leave pay in the community's assets is without merit. Vacation pay is a form of deferred earning. *Hurd*, 69 Wn. App. at 47. Sick leave that may be cashed-out upon retirement is also a vested and matured benefit, and all such benefits must be allocated in a dissolution action. *Id.* at 47; *In re Nuss*, 65 Wn. App. 334, 343, 828 P.2d 627 (1992). Stanley contends the court's valuation of the vacation and sick leave—

---

[3]At trial, Stanley testified: "I was aware that she was gambling but I was never aware she would spend so much money at one time gambling. Like pull tabs. I would think maybe — I would feel maybe she was spending $100 at the most. But now I find out she set [sic] there and maybe . . . run into, 4, $500 at one time."

$6,500 — was excessive in light of its net value of $5,680. The trial court took the net value of the vacation and sick leave at the time of dissolution, added in the retirement contributions and noted that too much income tax was withheld. This computation is similar in approach to that used in *Hurd*, 69 Wn. App. at 47, and does not constitute an abuse of discretion.

Finally, Stanley argues he was entitled to attorney fees at trial and is entitled to them on appeal because Glenda made sporadic, incomplete and untimely responses to his discovery requests. He points in particular to Glenda's failure to provide him with canceled checks requested before trial.

■ An award of attorney fees under RCW 26.09.140[4] is discretionary and is reviewed for abuse of discretion. *In re Knight*, 75 Wn. App. 721, 729, 880 P.2d 71 (1994), *review denied*, 126 Wn.2d 1011 (1995). Generally, the needs of the requesting party must be balanced against the other party's ability to pay. *Kruger v. Kruger*, 37 Wn. App. 329, 333, 679 P.2d 961 (1984). The court may also consider, however, "the extent to which one spouse's intransigence caused the spouse seeking a fee award to require additional legal services." *In re Crosetto*, 82 Wn. App. 545, 563, 918 P.2d 954 (1996); *In re Morrow*, 53 Wn. App. 579, 590, 770 P.2d 197 (1989). Once intransigence is established, the financial resources of the spouse seeking fees are irrelevant. *Crosetto*, 82 Wn. App. at 564.

■ ■ Stanley contends Glenda's failure to provide certain canceled checks before trial constituted intransigence, entitling him to attorney fees and costs. Just before and during trial, Glenda gave Stanley's counsel some of her check registers, but told him she had to specially request copies of the checks from her bank. When Stan-

---

[4]RCW 26.09.140 allows the court, "from time to time after considering the financial resources of both parties," to order one spouse to pay the reasonable costs of the other spouse's defense or maintenance of the dissolution proceedings. The appellate court is also authorized to exercise its discretion in awarding fees and costs on appeal.

ley's counsel protested at trial that he had not had time to examine the registers, the court offered him a continuance. He chose to cross-examine on the registers without a continuance, but reserved final argument until after he had looked at the checks. Eventually, Glenda handed over all the registers and copies of the checks, which are in the record. Other than the postponement of the final argument, Glenda's failure to provide the checks and registers in a more timely manner did not appear to handicap Stanley in any significant way. More important, Stanley did not request attorney fees on the basis of intransigence at trial. Generally, we will not consider an issue raised for the first time on appeal. *Washburn v. Beatt Equip. Co.*, 120 Wn.2d 246, 289, 840 P.2d 860 (1992).

Both Stanley and Glenda request attorney fees on appeal. Pursuant to RCW 26.09.140, this court may award reasonable attorney fees for maintaining or defending an action under RCW 26.09, provided the party seeking fees submits an affidavit of need as required by RAP 18.1(c). *Crosetto*, 82 Wn. App. at 565; *Bulicek*, 59 Wn. App. at 640. Glenda timely submitted an affidavit of need and we award her reasonable attorney fees and costs for defending this appeal. RAP 18.1(c); RCW 26.09.140.

Affirmed.

MUNSON, J., concurs.

THOMPSON, J. (dissenting) — The majority opinion accurately sets out the facts of this case. The court abused its discretion in awarding maintenance to Glenda, ordering Stanley to pay Glenda's gambling debts, and I disagree with the majority's award of attorney fees on appeal. Therefore, I respectfully dissent.

Spousal maintenance is a matter within the trial court's discretion. *In re Bulicek*, 59 Wn. App. 630, 633, 800 P.2d 394 (1990). A maintenance award constitutes an abuse of discretion when it fails to evidence a fair consideration of the facts and renders the paying spouse unable to meet

his own needs as well as the obligations imposed by the court. *In re Mathews*, 70 Wn. App. 116, 123, 853 P.2d 462, *review denied*, 122 Wn.2d 1021 (1993). Pensions are divided by either (1) dividing the monthly amount between the parties in a constant amount during the period of time in which the pension is payable; or (2) awarding the entire pension to one party and awarding the other a sum certain in lieu of the pension. *DeRevere v. DeRevere*, 5 Wn. App. 741, 746, 491 P.2d 249 (1971).

The ultimate question in reviewing a maintenance order is whether the award is just. *See* RCW 26.09.090; *Bulicek*, 59 Wn. App. 630. In this case, Glenda had the ability to support herself, unlike *Bulicek*, in which the court awarded the wife maintenance until the retirement benefits were paid because of her physical inability to work. *Id.* at 630. Glenda was also awarded property valued at approximately $71,000. Any need for maintenance was minimal. Awarding half of Stanley's pension without his ability to pay forced him to elect to retire. This result is not just, nor warranted; thus, the court abused its discretion.

The majority agreed with the trial court that the marital assets expended by Glenda on gambling did not constitute a dissipation of assets. This decision was based in part on the court's observation that gambling is legal. The legality of an activity should have no bearing on whether it constitutes a dissipation of marital assets. This court previously found that money spent on an excessive drinking habit was properly considered in a division of property as a dissipation of assets. *In re Clark*, 13 Wn. App. 805, 807-08, 538 P.2d 145, *review denied*, 86 Wn.2d 1001 (1975). The extreme to which Glenda was expending community assets on gambling was a dissipation of community assets. It was error to find otherwise solely because some forms of gambling are legal.

The court also based its decision on the fact that Glenda had substantial income of her own at the time she was gambling. Evidence relating to the lifestyle of a party may

be considered by the court for the purpose of determining whose labor or negatively productive conduct created the dissipation of marital assets. *Id.* at 809. Consideration of additional income earned by the party dissipating assets is not relevant. Glenda's gambling habits were certainly negatively productive conduct. Thus, regardless of Glenda's additional income, her gambling still constituted a dissipation of community assets.

In determining attorney fees on appeal, the court must consider the merit of the issues and the financial resources of both parties. *In re King*, 66 Wn. App. 134, 139, 831 P.2d 1094 (1992). The assets awarded to Glenda combined with her continued ability to support herself did not constitute need. The parties should pay their own fees on appeal.

Review denied at 131 Wn.2d 1025 (1997).