# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Marriage of )
                              )
MARJORIE A. WORTZ, )
                              )
                Respondent, )
                              )
         and )
                              )
KIRK E. BUHNE, )
                              )
                Appellant. )

NO. 72518-1-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: November 16, 2015

LEACH, J. — Kirk Buhne challenges the judgment, award of maintenance, and award of attorney fees in conjunction with the dissolution of his marriage to Marjorie Wortz. Because Buhne fails to identify any legal error or establish an abuse of the trial court's discretion, we affirm.

## FACTS

Kirk Buhne and Marjorie Wortz married in 2004. Buhne is a Canadian citizen. Several years before the marriage, he purchased a home in Victoria, British Columbia. Shortly before the parties married, Buhne bought another home in Tacoma, Washington. During the marriage, the couple primarily resided in the Tacoma home. At various times before and during the marriage, Buhne received substantial financial support from his parents.

The parties separated in the summer of 2012. In August 2012, Wortz filed a petition to dissolve the marriage in King County Superior Court.[1] At the time, Buhne had equity of approximately $328,000 in his Victoria home. About a month later, Buhne filed a mortgage on his Victoria property in favor of his parents, securing payment of $315,000. Wortz filed a lawsuit in Canada challenging the validity of the mortgage under Canadian law.

Following a seven-day trial in July 2014 on Wortz's petition, the King County Superior Court entered a decree and orders dissolving the marriage and distributing the property. The court determined that both the Tacoma and Victoria residences were Buhne's separate property and awarded those assets to him. The court also awarded to Buhne the construction material supply business that he formed and operated during the marriage.

The court ordered Buhne to pay monthly maintenance to Wortz for three years. The court ordered payment of $3,500 per month for two years and $2,500 per month for an additional year. In awarding maintenance, the court expressly found that the lack of substantial earnings and assets in the United States did not permit a just and equitable division of property. The court also entered a judgment against Buhne for $44,500, representing the amount of maintenance and other payments Buhne owed under pretrial temporary orders. In addition,

---

[1] Wortz resided in King County when she filed the petition.

the court ordered Buhne to pay attorney fees of $70,000 to Wortz. Buhne appeals.

## ANALYSIS

Representing himself on appeal, Buhne raises four issues. First, he claims that the trial court failed to consider and apply Washington's Uniform Fraudulent Transfer Act (UFTA), chapter 19.40 RCW. Next, he challenges the trial court's refusal to offset against a judgment for unpaid temporary maintenance the value of certain property he claims Wortz received. He also challenges the amount and duration of maintenance awarded to Wortz. Finally, he challenges the trial court's attorney fee award to Wortz. We address these claims in the order identified.

## UFTA

Buhne asks this court to remand the case for the trial court to consider and apply the UFTA. Buhne acknowledges that the Canadian court has not resolved litigation to determine the validity of the mortgage on his Victoria property in favor of his parents. He nevertheless contends that if the Canadian court upholds the mortgage, the trial court must reconsider his ability to pay the maintenance and attorney fees ordered.

The court awarded Wortz maintenance totaling approximately $114,000, to be paid over three years, in lieu of a property award. In doing so, the court

considered the relative earning capacities of the parties, the absence of assets of significant value located in the United States, and the fact that Buhne failed to prove that he had substantial outstanding debts, apart from the bank mortgages on the Tacoma and Victoria properties. Based on the testimony at trial of Buhne and his parents, the court found that Buhne received financial support from his parents in the form of gifts, not loans:

> The court does not accept Mr. Buhne's assertions concerning "debts" he claims he owes to his parents for "loans." The considerable financial support that Mr. Buhne has received from his parents has variously been characterized by both Mr. Buhne and by his parents, who testified at trial, as gifts, advances on expected inheritance, and loans. However, it does not appear that any contemporaneous accounting or records for these "loans" was ever kept—either by Mr. Buhne or by his parents. Nor did Mr. Buhne's receipt of cash from his parents carry any of the hallmarks typically associated with a loan, such as agreements regarding dates and methods for repayment of either principal or interest. No security for repayment was recorded during the marriage—it was only after Ms. Wortz filed her petition for temporary orders that Mr. Buhne caused a mortgage in favor of his parents to be recorded on the Medana home in Victoria, B.C. While the legal status of that recording will be decided by the British Columbia court pursuant to B.C. and Canadian law, this court for purposes of this proceeding is characterizing the cash Mr. Buhne received from his parents as gifts, rather than as loans.

Wortz did not contend at trial that Buhne violated the UFTA by filing a lien on his home. And Buhne maintained only that he was obligated to repay numerous loans made to him by his parents. Although he now argues at length that the mortgage in favor of his parents does not contravene the UFTA, he did

not make this argument to the trial court. Generally, this court does not consider arguments raised for the first time on appeal.[2] RAP 2.5(a) states in pertinent part,

> The appellate court may refuse to review any claim of error which was not raised in the trial court. However, a party may raise the following claimed errors for the first time in the appellate court: (1) lack of trial court jurisdiction, (2) failure to establish facts upon which relief can be granted, and (3) manifest error affecting a constitutional right.

Buhne does not address RAP 2.5(a) in his briefing. He merely suggests that his failure to make an argument under the statute below is "irrelevant." He raises no claim of a constitutional or jurisdictional dimension. Buhne fails to meet his burden to identify a basis for reviewing his claim for the first time on appeal.

Even if Buhne had preserved the error, a finding that he did not transfer an asset to his parents with "actual intent to hinder, delay, or defraud" a creditor within the meaning of the UFTA would not necessarily conflict with or undermine the trial court's determination that the funds Buhne received from his parents over the years were gifts.[3] Nothing in the record suggests that a conclusive determination of the amount of equity in the Victoria home would have affected the court's decisions regarding maintenance or fees. The court did not rule on the validity of the mortgage or assign a particular value to Buhne's equity in the

---

[2] LK Operating, LLC v. Collection Grp., LLC, 181 Wn.2d 117, 126, 330 P.3d 190 (2014).

[3] See RCW 19.40.041(a).

Victoria home at the time of the 2014 trial. The court relied on multiple factors to make its decision on the amount and duration of maintenance, including Wortz's mental health status and the parties' current relative earning capacities. And since the court awarded attorney fees on the alternative basis of intransigence, the value of Buhne's assets is not relevant to this award.[4] Finally, Buhne claims that a future determination by the Canadian court will require recalculation of the maintenance. If he decides that the Canadian court's final decision establishes a substantial change of circumstances, RCW 26.09.170 provides Buhne's remedy, a request to modify maintenance.

## UNPAID PRETRIAL MAINTENANCE

Buhne concedes that the court's award of $44,550 reflects the amount of his unpaid pretrial obligations. He claims, however, that the trial court should have offset the judgment by $22,500, to account for community property Wortz received while trial was pending.

Buhne fails to appreciate the trial court's broad discretion to divide and distribute assets in a dissolution proceeding.[5] Appellate courts give great

---

[4] See In re Marriage of Greenlee, 65 Wn. App. 703, 708, 829 P.2d 1120 (1992) (if a spouse's intransigence caused the other spouse to incur additional legal services, "'the financial resources of the spouse seeking the award are irrelevant'") (quoting In re Marriage of Morrow, 53 Wn. App. 579, 590, 770 P.2d 197 (1989)).

[5] See In re Marriage of Buchanan, 150 Wn. App. 730, 735, 207 P.3d 478 (2009).

deference to the trial court's judgment in a dissolution action.[6] We will not overturn a trial court's decisions in a dissolution action unless the party challenging the decision can show that the trial court abused its discretion.[7] A trial court abuses its discretion when its decision is manifestly unreasonable, based on untenable grounds, or made for untenable reasons.[8]

The trial court expressly set forth its rationale in distributing the parties' assets. The court determined that the only community asset of significant value was Buhne's business and awarded it to him. The court also recognized that the community had some interest in Buhne's separate real property assets. However, because of the difficulty in assigning a specific value to that interest, the dearth of significant liquid assets, and Wortz's previous receipt of more than $20,000 of community assets, the court declined to impose a lien or to compensate Wortz for her share of the community's interest. On the other hand, the court awarded significant maintenance to Wortz postdissolution and imposed judgment for the full amount of maintenance she should have received while the action was pending.

---

[6] In re Marriage of Landry, 103 Wn.2d 807, 809, 699 P.2d 214 (1985).
[7] In re Marriage of Bowen, 168 Wn. App. 581, 586, 279 P.3d 885 (2012).
[8] Bowen, 168 Wn. App. at 586.

In determining the overall division of property and maintenance, the court expressly considered the pretrial distribution of community assets to Wortz. Buhne fails to demonstrate that the trial court abused its discretion.

POSTTRIAL MAINTENANCE

Buhne challenges the amount and duration of maintenance. He claims that in determining his ability to pay maintenance, the trial court overestimated the value of his business, inflated his earning capacity, and underestimated his expenses. He argues that this court should reduce the term of maintenance to two years and the payment amount to no more than "50% of [his] documented net income for the last two years on record."

This court reviews the trial court's award of maintenance for abuse of discretion.[9] The relevant statutory factors the court must consider include each party's financial resources; the age, physical and emotional condition, and financial obligations of the spouse seeking maintenance; the standard of living during the marriage; the duration of the marriage; and the time needed to acquire education necessary to obtain employment.[10] Ultimately, the court has as its primary concern the parties' economic circumstances postdissolution.[11] The only

---

[9] In re Marriage of Zahm, 138 Wn.2d 213, 226-27, 978 P.2d 498 (1999).
[10] RCW 26.09.090.
[11] In re Marriage of Williams, 84 Wn. App. 263, 268, 927 P.2d 679 (1996).

limitation on the amount and duration of maintenance under RCW 26.09.090 is that in light of relevant statutory factors, the award must be just.[12]

In particular, Buhne argues that the court failed to properly evaluate the goodwill portion of his business. But, as the trial court observed, Buhne did not present the court with sufficient evidence "to value the business with confidence." The record on appeal does not include any trial exhibits. It is not clear what, if any, evidence Buhne offered with regard to the overall value of the business or the value of goodwill. Buhne presented the testimony of an accountant, but he did not value the business. Instead, the expert testified about the income generated by the business over a 17-month period, between October 2011 and March 2013, and concluded that the business generated annual income during that period of $28,000. The court determined that the business had a value of at least $56,000, twice the annual income figure testified to by Buhne's expert. Buhne points to no contradictory evidence of value, and we cannot say that the trial court's reliance on Buhne's expert's opinion regarding business income to approximate value was unreasonable or an abuse of discretion.

For earning capacity, the court found that Buhne's historical earnings ranged between $57,000 and $80,000. According to Buhne's expert, Buhne had personal income of $57,000 for the period he examined. The court noted,

---

[12] In re Marriage of Bulicek, 59 Wn. App. 630, 633, 800 P.2d 394 (1990).

however, that the expert had access to limited documents and that other documents considered by the court indicated that Buhne had annual income over $80,000. Buhne had not filed personal or business income taxes in the United States since 2005 and provided no income tax returns.

The testimony of Buhne's expert witness supports the court's determination that he previously earned at least $57,000. To the extent that Buhne testified that some business income generated after 2012 should not have been included in the calculation of his personal income because a former business associate conducted some independent transactions through the business, the court was not compelled to accept this explanation. The court expressly found that Buhne offered contradictory or otherwise not credible testimony throughout the proceedings.

Buhne does not dispute the court's determination that documents in the record indicate that his income exceeded $57,000. However, he challenges the accuracy of the $80,000 figure because it includes loans from his parents which he must repay and includes rental income without accounting for the mortgage payments on those properties. He also claims that the court should have deducted amounts he is obligated to contribute for the costs of his children's postsecondary education in Canada.[13] But the court refused to characterize the

---

[13] Testimony at trial established that Buhne's daughter's college expenses were between $5,000 and $6,000 per year. Buhne's son was not yet in college,

financial support Buhne's parents provided as loans. And because the court did not calculate Buhne's net income, it was not necessary to deduct expenses or exclude rents.

Buhne also challenges the court's determination that he will be able to resume operation of a "defunct" business. But, here again, the court did not accept Buhne's claim that he had not operated the business since 2011 or early 2012. And, in any event, the court's determination of Buhne's earning capacity based on his historical earnings does not equate to a finding that Buhne will necessarily be able to rebuild his business to its previous level.

Finally, Buhne claims that the evidence affirmatively established that Wortz will be able to reenter the work force within two years of the dissolution. He argues, therefore, that the court abused its discretion by ordering him to pay maintenance for three years. However, Wortz's therapist merely predicted that with appropriate mental health treatment, Wortz could be "functioning" within a year or two. And the expert Buhne retained to evaluate Wortz's mental health status did not assess her ability to obtain and maintain gainful employment.

---

and the amount of his future expenses was unknown. Again, to the extent Buhne claims that his support obligation to Wortz must be reevaluated based on circumstances that have arisen after trial, such as increased child educational support obligations or fluctuation in the currency exchange rate, his remedy is to seek modification under the support statute. See RCW 26.09.170(1).

In sum, nothing in the record suggests that the amount or duration of maintenance for three years fell outside of the acceptable range of choices or that the court otherwise abused its discretion.

ATTORNEY FEES

The court ordered Buhne to pay attorney fees to Wortz based on the following finding:

> The petitioner has the need for the payment of fees and costs and the other spouse has the ability to pay these fees and costs. The petitioner testified at trial that she has incurred attorney fees and costs [of] an amount in excess of $100,000. The court finds that, due to the parties' respective earning capacities and financial status, as well as due to Mr. Buhne's intransigence in failing to provide complete and timely discovery, and in failing to obey court orders, it is reasonable to require Mr. Buhne to pay $70,000 to Ms. Wortz's attorney for attorney fees and costs.

A trial court has discretionary authority to order an award of attorney fees.[14] RCW 26.09.140 allows a trial court to award attorney fees after consideration of the financial resources of each party. Separate from this statutory basis, a trial court may award a party legal fees caused by the other party's intransigence.[15] "Intransigence" means the quality or state of being uncompromising.[16] Intransigent conduct includes obstructionist behavior, repeatedly filing unnecessary motions, or making a trial unduly difficult and

---

[14] In re Marriage of Crosetto, 82 Wn. App. 545, 563, 918 P.2d 954 (1996).
[15] Greenlee, 65 Wn. App. at 708.
[16] In re Marriage of Schumacher, 100 Wn. App. 208, 216, 997 P.2d 399 (2000).

costly.[17]  For fees awarded on this basis, the party's ability to pay the fee is irrelevant.[18]

When making an award of fees for intransigence, the court should segregate those fees caused by the intransigence from those incurred for other reasons.[19]  But segregation is not required if the intransigence permeates the entire proceedings.[20]  Buhne claims the trial court here did not find that his intransigence permeated the proceedings.  While the trial court made no finding reciting this precise language, the court expressly and specifically determined that Buhne "systematically disregarded and disobeyed court orders in connection with this matter" and that he "displayed considerable additional intransigence during the course of this litigation."  The record supports these findings, and they are equivalent to a finding characterizing Buhne's intransigence as pervasive.  Because his intransigence permeated the entire proceedings, the trial court was not required to segregate the fees.  And, here again, because the court awarded fees on the alternative basis of intransigence, Buhne's arguments regarding his lack of means to pay the fees awarded are irrelevant.[21]

---

[17] Greenlee, 65 Wn. App. at 708.
[18] In re Marriage of Foley, 84 Wn. App. 839, 846, 930 P.2d 929 (1997).
[19] Crosetto, 82 Wn. App. at 565.
[20] In re Marriage of Burrill, 113 Wn. App. 863, 873, 56 P.3d 993 (2002).
[21] See Foley, 84 Wn. App. at 846; Greenlee, 65 Wn. App. at 708.

Wortz requests attorney fees on appeal based on "need and ability to pay" and her contention that Buhne's appeal is frivolous. Under RCW 26.09.140, we consider "the arguable merit of the issues on appeal and the financial resources of the respective parties."[22] And "[a]n appeal is frivolous if there are no debatable issues on which reasonable minds might differ and it is so totally devoid of merit that there is no reasonable possibility of reversal."[23] Any doubt about whether an appeal is frivolous is resolved in the appellant's favor.[24] Wortz has not filed a financial affidavit in this matter in accordance with RAP 18.1(c) to demonstrate her financial need. Exercising our discretion, we decline to award fees on appeal.

Affirmed.

_Leach, J._

WE CONCUR:

_Spearman, C.J._                    _Cox, J._

---

[22] In re Marriage of Booth, 114 Wn.2d 772, 779, 791 P.2d 519 (1990).

[23] In re Marriage of Schnurman, 178 Wn. App. 634, 644, 316 P.3d 514 (2013), review denied, 180 Wn.2d 1010 (2014).

[24] Schnurman, 178 Wn. App. at 644.