**FILED**
**JULY 2, 2020**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III



IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | No. 36509-3-III |
| | ) | |
| BENJAMIN E. JONES, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | UNPUBLISHED OPINION |
| and | ) | |
| | ) | |
| LISA A.M. JONES, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, C.J. —Lisa McCrea-Jones[1] appeals a divorce decree, dissolving her

20-year marriage to Benjamin Jones. Ms. McCrea-Jones challenges the trial court's

allocation of student loan debt, her maintenance award, orders regarding specific pieces

---

[1] The appellant's name was changed to "Lisa Annette McCrea-Jones" under the dissolution decree. Clerk's Papers at 64.

of property, and denial of attorney fees. We affirm the trial court's rulings and deny the parties' requests for attorney fees on appeal.

## BACKGROUND

The parties were married in Alaska on May 17, 1996. Shortly after marriage, the couple completed their undergraduate degrees and adopted two special needs children.[2] Mr. Jones worked for Alaska Airlines and the Alaska Air National Guard, and provided the family's main source of income. Ms. McCrea-Jones focused on child-rearing, but she also worked full time, earning approximately $30,000 per year.

In 2004, Ms. McCrea-Jones left the workforce to pursue a doctoral degree in psychology at Oregon's George Fox University. The family moved from Alaska to Oregon, with Mr. Jones commuting to Alaska for work and sometimes deploying to other locations for his Alaska Air National Guard service. Mr. Jones also worked for Evergreen Aviation in McMinnville, Oregon, for six months after the move, then resumed work for Alaska Airlines in Portland.

The family funded much of Ms. McCrea-Jones's doctorate studies through student loans. It typically takes five years to complete a doctoral degree in psychology from George Fox University. But Ms. McCrea-Jones took nine years. Her progress was

---

[2] The two children are biological siblings.

delayed by childcare responsibilities, including the adoption of a third child in 2008.[3]

Approximately $175,000 in student loans were taken out to support Ms. McCrea-Jones's

professional studies. Of that amount, roughly $30,000 went to support community

expenses. The community also contributed about $60,000 toward Ms. McCrea-Jones's

education.

The family moved to Spokane in 2010. At that point, Ms. McCrea-Jones planned

to complete her dissertation and finish the process for obtaining a professional license.

Her goal was to begin employment as a licensed psychologist by 2011. Ms. McCrea

Jones was in contact with a potential employer, and contemplated a job offer for $93,000

per year.

Ms. McCrea-Jones's progress toward employment did not work out as planned.

She did not receive her doctorate until June 2013. In 2015, Ms. McCrea-Jones traveled to

San Francisco to participate in a psychology licensure preparation course. At this point,

Ms. McCrea-Jones expected the license process would take approximately four months.

She was well positioned to spend time on obtaining her license, as her two oldest children

had moved out of the home and the youngest child was enrolled in school full time.

---

[3] The third child is the biological sibling of the Joneses' other two children.

However, Ms. McCrea-Jones was unable to obtain her license. She did manage to teach as a lecturer at Whitworth University from 2014 to 2015, earning approximately $27,000 per year.

In 2015, the parties were contacted by the State of Alaska, requesting they take in a fourth child.[4] At this point, the marriage had deteriorated. Mr. Jones expressed reluctance at adding another child to the family. Nevertheless, he participated in at least one trip to Alaska to meet the child. The parties separated in November 2016 and Ms. McCrea-Jones pursued adoption as a single parent. Mr. Jones filed for legal separation on December 30, 2016. A petition for dissolution was filed several months later.

Shortly before and after separation, the parties engaged in some financial transactions that proved relevant at trial. Prior to separation, Ms. McCrea-Jones had cashed out $40,000 in equity from the parties' home. Though the funds were originally intended for home repairs, Ms. McCrea-Jones spent the bulk of the money on post-separation legal fees. Ms. McCrea-Jones was also involved in an accident that totaled her vehicle. Ms. McCrea-Jones purchased a new vehicle for $27,032, including a $3,000 down payment. The source of the down payment was unclear, but may have come from the $40,000 in home equity.

---

[4] The fourth child is the biological sibling of the other three.

4

A superior court commissioner issued temporary orders governing the parties' financial circumstances pending trial. In addition to a support payment for the parties' third child, Mr. Jones was ordered to make mortgage payments on the parties' home and to pay $1,800 each month in spousal maintenance. The temporary order did not specify which party was responsible for making payments on the student loans. Ms. McCrea-Jones obtained a forbearance of the loans pending trial. Due to accrued interest, this raised the monthly payments on the loans from $1,153 to $2,055.

The matter went to trial in August 2018. By that time, Ms. McCrea-Jones had not yet completed the licensing process. Her student loan balance was $154,592. Ms. McCrea-Jones testified that she planned to start working on her license immediately, but it would take 7 to 11 months to complete the process and obtain employment. Apart from maintenance and child support, Ms. McCrea-Jones's only income at the time of trial was $1,100 per month from the State of Alaska. Mr. Jones's monthly net income was $7,098.62.

The primary financial disputes at trial were the student loans, maintenance, sale of the parties' residence and the $40,000 in home equity.

Mr. Jones asked the court to assign Ms. McCrea-Jones the student loan liabilities and to award him reimbursement for $16,237.57 in overpaid maintenance due to Ms. McCrea-Jones's failure to make loan payments during the course of the dissolution.

5

Mr. Jones also requested the court terminate maintenance, order the immediate sale of the parties' home, and characterize the $40,000 in home equity as a pre-dissolution distribution.

Ms. McCrea-Jones argued the student loan obligation should be split and that no reimbursement was owing. She requested five years' maintenance and a reasonable period of time (three to five years) to refinance the residential property. Ms. McCrea-Jones agreed that the $40,000 should be characterized as a pre-dissolution distribution. However, she claimed this amount should not be calculated against her final award, but instead characterized as an attorney fee award based on her need and Mr. Jones's ability to pay.

The trial court issued a compromise decision. It assigned Ms. McCrea-Jones full responsibility for repaying her student loans, reasoning the marital community had never seen any financial benefit from Ms. McCrea-Jones's doctorate. However, the court did not find Mr. Jones was entitled to an award for overpayment. The court ordered Mr. Jones to continue making maintenance payments, but only for one year and at a reduced amount that did not include monthly mortgage costs. The court based the one-year timeline on its finding that Ms. McCrea-Jones would be able to become fully employed within nine months. The court granted Ms. McCrea-Jones's request for time to refinance the residential property, but again limited the period to 12 months. Finally, the

court characterized the $40,000 in home equity funds as a pre-dissolution distribution, as requested by the parties. However, the court did not offset this distribution as an award of attorney fees, as requested by Ms. McCrea-Jones.

The court emphasized that its property distribution decisions were driven by equitable considerations. Given the differences in the parties' current employment circumstances, Mr. Jones was primarily awarded nonliquid assets such as retirement accounts. Ms. McCrea-Jones was awarded assets that were more easily reduced to cash, including the bulk of the proceeds from the expected sale of the parties' Oregon rental property. The trial court reasoned the funds from the sale of the rental property could be used to help Ms. McCrea-Jones refinance her home within the one-year timeline. Because Mr. Jones was not awarded as many liquid assets, the court declined Ms. McCrea-Jones's request for an award of attorney fees.

Ms. McCrea-Jones appeals.

ANALYSIS

All issues in this appeal are governed by the abuse of discretion standard of review. *See In re Marriage of Neumiller*, 183 Wn. App. 914, 335 P.3d 1019 (2014). This is an extremely deferential standard; reversal is warranted in only rare cases. *In re Marriage of Williams*, 84 Wn. App. 263, 267, 927 P.2d 679 (1996). A trial court abuses its discretion if its award is based on untenable grounds, is made for untenable reasons, or

is manifestly unjust or clearly inequitable. *In re Marriage of Muhammad*, 153 Wn.2d 795, 803, 108 P.3d 779 (2005); *Davis v. Davis*, 13 Wn. App. 812, 813, 537 P.2d 1048 (1975). If reasonable minds can differ as to the appropriateness of a trial court's disposition, the matter must be affirmed. *Davis*, 13 Wn. App. at 813-14.

## Assignment of student loan debt

Characterized as an inequitable disposition of property under RCW 26.09.080, Ms. McCrea-Jones challenges the trial court's decision to assign her sole responsibility for repayment of her student loans.[5] We find no abuse of discretion.

A professional degree is a financial asset that can be taken into account in a dissolution decision. *In re Marriage of Washburn*, 101 Wn.2d 168, 178, 677 P.2d 152 (1984). When a spouse obtains a professional degree during marriage, but dissolution occurs before realization of a financial benefit from the degree, an economic offset may be warranted. *Id.* The offset can take the form of maintenance under RCW 26.09.090, or it may be considered when "making a fair and equitable division of property and liabilities pursuant to RCW 26.09.080." *Id.*

The trial court here appropriately accounted for Ms. McCrea-Jones's doctorate by assigning her both the future costs and the benefits of the degree under RCW 26.09.080.

---

[5] Discounting the student loans, the court's assignments of assets and liabilities favored Ms. McCrea-Jones.

It is undisputed that the marital community never realized any financial gain from Ms. McCrea-Jones's doctorate. Although some of the student loans were used for community expenses, these payments were more than offset by community contributions to Ms. McCrea-Jones's education and the loss of Ms. McCrea-Jones's previous income. Moreover, the true value of the doctoral degree is not the cash amount of the loans, but the future earning potential the degree confers. Ms. McCrea-Jones was able to leave the marriage with this future earning potential, without having ever contributed a portion of it to the marital community. Given the indivisible nature of Ms. McCrea-Jones's degree, it was equitable for the court to assign all future costs and benefits of the degree to Ms. McCrea-Jones.

*Spousal maintenance*

Ms. McCrea-Jones challenges the trial court's maintenance award, arguing it is unreasonably low. Her primary focus is on what she perceives was the trial court's inequitable distribution of assets and liabilities, discussed above. According to Ms. McCrea-Jones, the trial court should have offset its unequal property distribution with a much larger maintenance award. Given our disagreement with Ms. McCrea-Jones's arguments regarding assets and liabilities, we also disagree with her analysis of maintenance.

9

Spousal maintenance ''is not awarded as a matter of right." *In re Marriage of*

*Luckey*, 73 Wn. App. 201, 209, 868 P.2d 189 (1994). The purpose of maintenance is to

allow the recipient a period of time to prepare for life on a single income. *Id*. A trial court

may award a spouse post-decree maintenance "in such amounts and for such periods of

time as the court deems just." RCW 26.09.090. When considering a maintenance request,

the court must consider six statutory factors, including:

> (a)  The financial resources of the party seeking maintenance, including separate or community property apportioned to him or her, and his or her ability to meet his or her needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party;
> (b)  The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment appropriate to his or her skill, interests, style of life, and other attendant circumstances;
> (c)  The standard of living established during the marriage or domestic partnership;
> (d)  The duration of the marriage or domestic partnership;
> (e)  The age, physical and emotional condition, and financial obligations of the spouse or domestic partner seeking maintenance; and
> (f)  The ability of the spouse or domestic partner from whom maintenance is sought to meet his or her needs and financial obligations while meeting those of the spouse or domestic partner seeking maintenance.

*Id*. The trial court's "paramount concern is the economic condition in which the

dissolution decree leaves the parties." *Williams*, 84 Wn. App. at 268.

Here, the trial court's maintenance decision was consistent with the

aforementioned statutory factors. The court found Ms. McCrea-Jones could be fully

employed and self-sufficient within 12 months. Given Ms. McCrea-Jones's relatively young age (43) and apparent good health, she would be able to have a long career and realize the benefits of her professional degree. With the assets from the sale of the parties' rental property in Oregon, the trial court reasoned Ms. McCrea Jones would be able to maintain her existing home and meet other outstanding obligations. Although the trial court certainly could have awarded more maintenance to Ms. McCrea-Jones, it was not required to do so. The maintenance decision is therefore not subject to reversal.

*Individual property decisions*

   *$40,000 taken from home equity*

Ms. McCrea-Jones claims the trial court abused its discretion by characterizing her use of $40,000 in community funds as a pre-dissolution distribution. This claim fails based on invited error. *See In re Det. of Rushton*, 190 Wn. App. 358, 372, 359 P.3d 935 (2015) ("Under the doctrine of invited error, a party may not materially contribute to an erroneous application of law at trial and then complain of it on appeal."). At trial, Ms. McCrea-Jones agreed that the $40,000 constituted a pre-dissolution distribution. She simply requested that the $40,000 not be counted toward her final award and instead be treated as an attorney fee award. The trial court declined this request, noting that it had fashioned its distribution of liquid assets in a way that favored Ms. McCrea-Jones over Mr. Jones. Because Ms. McCrea-Jones agreed with the court's characterization of the

asset at trial, she cannot allege on appeal that the trial court erred in its characterization. Moreover, the court's ruling on the $40,000 character was a reasoned decision that does not qualify for reversal under the abuse of discretion standard.

### *The Chrysler Pacifica*

Ms. McCrea-Jones challenges the trial court's characterization of the Chrysler Pacifica as community property. According to Ms. McCrea-Jones, because the vehicle was purchased post-separation with a down payment that was used from pre-dissolution distribution funds, it should have been treated as separate property and not used to offset the court's property award.

Again Ms. McCrea-Jones's position is precluded by invited error. At the presentment hearing, the trial court asked the parties for guidance on whether the Chrysler should be characterized as community or separate property. Ms. McCrea-Jones's attorney told the court: "You could go either that way or the law would allow, I think the down payment was [$]3,000. You could call that one community, the remainder separate but it is probably cleaner to do it all as community." 4 Report of Proceedings (RP) (Sept. 17, 2018) at 791. Based on this representation, the court found the Pacifica was a community asset. The court also noted the amount of the asset was "trivial" (there was only $3,000 in equity) and that its allocation of assets and liabilities would be the same regardless of the proper characterization. *Id.* at 790-91. The trial court's observation

comports with precedent. *See Williams*, 84 Wn. App. at 269 (primary concern is whether allocation is fair and equitable, not the technical characterization as separate or community). Accordingly, we do not find the trial court abused its discretion in its characterization.

*Numerica account*

Ms. McCrea-Jones claims the trial court abused its discretion by failing to charge Mr. Jones with a pre-dissolution distribution of $3,500, which he used to pay attorney's fees.

Ms. McCrea-Jones's challenge would require us to review the trial court's final award in a myopic manner. We decline to do so. "RCW 26.09.080 does not require a mathematically precise division of all marital property. Rather, it requires a 'just and equitable' distribution of property." *Davis*, 13 Wn. App. at 814. So long as a trial court's decision falls within the just and equitable criterion, mere mischaracterization of property does not warrant reversal. *Williams*, 84 Wn. App. at 269.

Here, the trial court emphasized that it was not aiming for "dollar-for-dollar" precision, but a fair and equitable result. 4 RP (Nov. 16, 2018) at 859. This was a legally sound approach and the trial court adequately explained the factual basis for its overall distribution. We will not reverse the decree based merely on the alleged mischaracterization of $3,500.

13

*The residential property*

Ms. McCrea-Jones claims the trial court abused its discretion in ordering that she sell or refinance her home within one year of trial. We are unpersuaded.

At trial, Ms. McCrea-Jones agreed to refinancing, so long as she was given enough time to get back on her feet. The trial court made an oral finding (later incorporated into its written findings) that one year would be sufficient, particularly given the expected sale of the parties' Oregon rental property. Ms. McCrea-Jones has not challenged this finding on appeal. There was no abuse of discretion.

*Denial of attorney fees*

As a final matter, Ms. McCrea-Jones challenges the trial court's denial of attorney fees under RCW 26.09.140. We note that as a technical matter Ms. McCrea-Jones never asked the trial court for attorney fees. She instead asked the court to treat the $40,000 home equity distribution as an attorney fee award. As previously explained, the trial court declined Ms. McCrea-Jones's request to treat the distribution as attorney fees, finding that the liquid assets awarded in her favor provided sufficient funds. Again, this was not an abuse of discretion.

## CONCLUSION

The final order on dissolution is affirmed. The parties' requests for attorney fees on appeal are denied. Neither party has complied with the financial declaration

14

No. 36509-3-III
*In re Marriage of Jones*

requirements of RAP 18.1(c). *See In re Marriage of Spreen*, 107 Wn. App. 341, 351-52,

28 P.3d 769 (2001).

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____, C.J.
Pennell, C.J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Andrus, J.[6]

---

[6] The Honorable Beth Andrus is a Court of Appeals, Division One, judge sitting in Division Three under CAR 21(a).