IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | |
| | ) | No. 38590-6-III |
| ISRAEL RODRIGUEZ | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| PENNY RODRIGUEZ, | ) | |
| | ) | |
| Appellant. | ) | |

COONEY, J. — Penny Gardner[1] and Israel Rodriguez were married for almost 15 years. During the marriage, the parties formed adult and pediatric care facilities and a real property holding company. Each party also brought established adult care facilities to the marriage. In 2017, Mr. Rodriguez filed a petition for a dissolution of their marriage. The ensuing litigation proved to be contentious with much dissension over personal property, real property, and business valuations. During the dissolution, the parties' largest asset, Weeping Ridge North, a pediatric care facility, lost its license and was subject to a wrongful death lawsuit. Weeping Ridge North's license was lost while

---

[1] In the final decree of dissolution, Ms. Rodriguez changed her last name to Gardner.

Mr. Rodriguez was operating the facility without Ms. Gardner. Ultimately, the trial court ordered a division of the parties' property and debts, entered findings as to the parties' incomes, awarded Ms. Gardner spousal maintenance, and declined to award attorney fees to either party.

Ms. Gardner appeals, arguing that (1) the trial court failed to consider the economic circumstances of each spouse at the time the property distribution was to become effective and that the distribution of assets resulted in a patent disparity in the economic circumstances between she and Mr. Rodriguez, (2) the trial court should have reopened the evidence to evaluate the ramifications of Mr. Rodriguez's alleged negatively productive conduct that resulted in the loss of Weeping Ridge North, (3) the trial court erred in calculating the parties' incomes, (4) the trial court's award of spousal maintenance was indubitably a debt repayment, and (5) she should have been awarded attorney fees.

We hold that the property and debt distribution resulted in a just and equitable distribution of the parties' property and debts. We remand for the trial court to correctly calculate the parties' incomes and, in light of their accurate incomes, decide whether Ms. Gardner should be awarded spousal maintenance and attorney fees.

## BACKGROUND

Ms. Gardner and Mr. Rodriguez married in 2003. The parties had four children during the marriage whose ages ranged from 16 years old to 17 years old at the time of

the trial.[2]  Prior to the marriage, Mr. Rodriguez owned and operated a business known as

Weeping Ridge Estate, an adult care facility, and Ms. Gardner owned Grande Manor

Care, also an adult care facility.  During their marriage, the parties formed three other

businesses, Weeping Ridge West, another adult care facility, Weeping Ridge North, a

pediatric care facility, and Israel & Penny Rodriguez Investments LLC (IPRI), a real

property holding company with over 30 properties primarily used as rentals.  The parties'

various businesses generated substantial income.

Ms. Gardner has a bachelor's degree in business from Gonzaga University, a

master's degree in counseling from Heritage University, a bachelor's degree in nursing

from Washington State University, and she has completed approximately 80 percent of a

nurse practitioner's degree.  Mr. Rodriguez has a degree in marketing and is a certified

nursing assistant.

On May 18, 2017, Mr. Rodriguez petitioned for, and was granted, a domestic

violence protection order (DVPO) against Ms. Gardner.  The DVPO required Ms.

Gardner to leave the family home.  Ms. Gardner was also precluded from participating in

the management of the adult and pediatric care facilities because "a person who has been

found to be domestically violent would not be permitted to provide care to vulnerable

adults or disabled children."  Clerk's Papers (CP) at 2924.  Further, due to the allegations

---

[2] Three of the children are triplets and were 17 years old at the time of divorce.

3

of domestic violence, Ms. Gardner was unable to work as a registered nurse in the state of Washington.

DISSOLUTION AND SUBSEQUENT EVENTS

On May 25, 2017, Mr. Rodriguez filed a petition for dissolution of the parties' marriage. Shortly thereafter, on June 19, 2017, the parties entered an agreed temporary family law order. In part, the temporary order granted Mr. Rodriguez authority to operate Weeping Ridge North, Weeping Ridge West, Weeping Ridge Estate, Grande Manor, and IPRI. A neutral account was created to collect revenue and pay bills for the businesses. Mr. Rodriguez and Ms. Gardner were each authorized to withdraw $20,000 per month from the neutral account.

In 2019, the State of Washington suspended Weeping Ridge North's license to operate as a result of alleged misconduct by Mr. Rodriguez and staff members. Thereafter, a receiver was appointed. Mr. Rodriguez continued to manage the day-to-day affairs of the parties' other businesses.

As a result of the alleged misconduct that occurred at Weeping Ridge North, both parties were named as defendants in a wrongful death lawsuit. The lawsuit claimed medical negligence that resulted in the death of a child. Ms. Gardner was served with the wrongful death complaint a few days prior to the dissolution trial. Ms. Gardner filed a separate lawsuit against Mr. Rodriguez, alleging fraud caused the loss of Weeping Ridge North.

DISSOLUTION TRIAL AND TRIAL COURT'S FINDINGS

The dissolution trial commenced on March 23, 2021. Virtually every issue was contested and both of the parties presented vastly different valuations for the parties' real and personal property. For example, Mr. Rodriguez's business valuation experts calculated Weeping Ridge Estate's value between $262,000 and $265,000, while Ms. Gardner's expert witness valued it at $519,000. Similarly, Ms. Gardner valued Giggles, a horse that belonged to the parties, at $29,000 while the receiver for Weeping Ridge North valued it at $2,000.

At the conclusion of the trial, Ms. Gardner requested that, in addition to being awarded a majority of the rental properties owned by IPRI, she also be awarded the Grande Manor Care business. She further requested that Mr. Rodriguez pay the mortgage debts associated with IPRI's properties.

A decree of dissolution was entered on October 21, 2021. The trial court valued the parties' total assets at $12,551,782 and awarded $6,297,938 of the assets to Ms. Gardner and $6,252,393 to Mr. Rodriguez. Ms. Gardner was awarded the majority of the real properties held by IPRI, and Mr. Rodriguez was awarded the remaining businesses (Weeping Ridge Estate, Weeping Ridge West, Weeping Ridge North, and Grande Manor Care). Ms. Gardner was ordered to pay the mortgage debt associated with the real properties in full within two years. Notably, the parties' 2019 tax returns reflected that IPRI lost $61,899 over the year. The same tax returns showed that the couple's other

four businesses, all awarded to Mr. Rodriguez, generated almost $600,000 per year in income.[3]

The court ordered Mr. Rodriguez to pay Ms. Gardner spousal maintenance in the amount of $15,000 per month for 20 months, totaling $300,000. In awarding Ms. Gardner maintenance, the court stated that "[i]t is appropriate that an amount approximating one half of the costs of the receivership be restored to [Ms. Gardner] in the term of maintenance, less payments to her attorney and experts." CP at 2945.

The court also entered a child support worksheet. On the worksheet, the court assigned $47,935 of monthly business income to Ms. Gardner and imputed $10,000 of monthly income to her, finding her to be voluntarily unemployed. The court also included $15,000 per month in spousal maintenance in Ms. Gardner's monthly income calculation. The trial court calculated Ms. Gardner's gross monthly income at $72,935. Mr. Rodriguez's gross monthly income was calculated at $208,974.

The trial court did not order Ms. Gardner to pay child support even though three of the parties' four children resided with Mr. Rodriguez. However, the court did order the parties to share 80 percent of the children's postsecondary educational expenses. The court ordered that the parties pay the 80 percent at the "ratio their incomes bear to one

---

[3] According to the court's income calculations for the parties, the businesses awarded to Mr. Rodriguez generated far more monthly income than the tax returns reflect.

another." CP at 2934. Lastly, the court ordered that each party pay their own attorney fees.

WEEPING RIDGE NORTH

Following trial, Ms. Gardner filed a motion to reopen evidence requesting that "the [c]ourt bifurcate the issue of Weeping Ridge North, and allow for additional testimony when the matter is ripe for determination and the outcome of these collateral facts are known." CP at 2230. Ms. Gardner argued that the court should reopen evidence in order to analyze the issues surrounding Weeping Ridge North and ongoing litigation.

After the trial court heard arguments from the parties, it decided that, after two years, the case "needs to be closed" and declined to reopen evidence. Rep. of Proc. (RP) (July 30, 2021) at 272. By this time the court was aware of the ongoing litigation between the parties related to Weeping Ridge North.

Additionally, both parties requested the trial court refrain from making fault findings related to the losses incurred by Weeping Ridge North so as not to have a preclusive effect in the pending lawsuits. The court agreed and limited its findings related to Weeping Ridge North.

Ms. Gardner timely appeals.

No. 38590-6-III
*In re Marriage of Rodriguez*

ANALYSIS

I.  DISTRIBUTION OF PROPERTY AND DEBT

Ms. Gardner argues that the court abused its discretion in dividing the parties' property and debts.  "A trial court in dissolution proceedings has broad discretion to make a just and equitable distribution of property based on the factors enumerated in RCW 26.09.080."  *In re Marriage of Wright*, 179 Wn. App. 257, 261, 319 P.3d 45 (2013).  "This court will affirm unless an appellant demonstrates that the trial court manifestly abused its discretion."  *Id.*  "A manifest abuse of discretion occurs when the discretion was exercised on untenable grounds."  *In re Marriage of Rockwell*, 141 Wn. App. 235, 243, 170 P.3d 572 (2007).  If the court's decree results in a patent disparity in the parties' economic circumstances, then a manifest abuse of discretion has occurred. *Id.*  "The spouse who challenges such decisions bears the heavy burden of showing a manifest abuse of discretion on the part of the trial court."  *In re Marriage of Landry*, 103 Wn.2d 807, 809, 699 P.2d 214 (1985).  Moreover, appellate courts are reluctant to encroach upon the trial court's discretion "by providing a precise formula prescribing the amount of property to be distributed."  *In re Marriage of Washburn*, 101 Wn.2d 168, 179, 677 P.2d 152 (1984).

RCW 26.09.080 states that in a proceeding for dissolution of a marriage the court must make a just and equitable distribution of property and, in doing so, must consider: (1) the nature and extent of the community property, (2) the nature and extent of the

8

separate property, (3) the duration of the marriage, and (4) the economic circumstances of each spouse at the time the division of property becomes effective. This list of factors is nonexclusive. *Id.*

As it relates to the distribution of the parties' property and debts, Ms. Gardner presents three alleged errors. First, Ms. Gardner argues the trial court failed to consider the economic circumstances of her and Mr. Rodriguez at the time the division of property and debts was to become effective. Second, Ms. Gardner assigns error to the trial court's failure to consider Mr. Rodriguez's alleged negatively productive conduct related to Weeping Ridge North. Lastly, Ms. Gardner asserts the trial court's distribution of property resulted in a patent disparity in the parties' economic circumstances.

A. ECONOMIC CIRCUMSTANCES AT TIME OF DIVISION OF PROPERTY

Ms. Gardner argues that the trial court failed to consider the parties' respective economic circumstances. Specifically, she contends the trial court failed to make findings as to each parties' income before distributing the property, that the trial court entered incorrect incomes for both parties in the child support worksheet, and that the court erred by declining to reopen evidence related to Weeping Ridge North and its financial implications. Though the court erred in its child support worksheet income calculations, Ms. Gardner is unable to meet her heavy burden of establishing that the trial court engaged in a manifest abuse of discretion by failing to consider the parties' economic circumstances at the time the division of property and debts was to become

9

effective and that the final distribution resulted in a patent disparity between the parties'

economic circumstances.

Ms. Gardner directs us to *In re Marriage of Anthony*, 9 Wn. App. 2d 555, 446 P.3d

635 (2019), to support her contention that the court failed to consider the economic

circumstances of each party at the time the distribution was to become effective.

Specifically, Ms. Gardner argues that, pursuant to the holding in *Anthony*, the court was

required to make findings on the actual incomes of the parties before making its property

distribution. In *Anthony*, Division One of this court remanded the matter to the trial court

for a determination of each parties' income for the purpose of determining maintenance.

*Id.* at 563. However, maintenance decisions are regulated by RCW 26.09.090, while

property and debt distribution is analyzed under RCW 26.09.080. Ms. Gardner has failed

to provide adequate authority to support her contention that a trial court is required to

make findings as to the parties' incomes prior to ordering a just and equitable distribution

of their property and debts.

Ms. Gardner next argues that if the court did consider her income, it did so based

on an amount inflated by $47,935 per month. We agree that the trial court mistakenly

inflated Ms. Gardner's income on its child support worksheet by assigning her $47,935 a

month of business income, presumably from the Grande Manor business.[4]  Though the

court miscalculated the parties' respective incomes in its child support worksheet, that

does not render its entire property distribution erroneous.

Mr. Rodriguez argues that the error in the parties' incomes was harmless because

Ms. Gardner was not ordered to pay child support even though three of the parties' four

children resided with him.  However, there is no evidence that the court's decision to

decline to order that Ms. Gardner pay child support rendered the income calculation error

harmless, and Mr. Rodriguez does not adequately explain how the two concepts are

related.

Ms. Gardner further argues that the trial court erred when it declined to reopen

evidence to allow consideration of the financial implications of the ongoing collateral

litigation.  Ms. Gardner requested "the Court bifurcate the issue of Weeping Ridge North,

and allow for additional testimony when the matter is ripe for determination and the

outcome of these collateral facts are known."  CP at 2230.  Lengthy and robust oral

argument was held on the issue and the court ultimately decided that after two years, the

---

[4] The error seems to have arisen because Ms. Gardner's forensic economist, Erick West, prepared a child support worksheet showing Ms. Gardner's income assuming that she received Grande Manor as well as 15 other rental properties.  The child support worksheet was submitted at the close of trial.  The court ultimately awarded the Grande Manor business to Mr. Rodriguez.  It appears the court adopted that portion of Mr. West's child support worksheet assigning the Grande Manor monthly income to Ms. Gardner but failed to catch or correct the resulting error.

case "needs to be closed." RP (July 30, 2021) at 272. At the time the division of property and debts was to become effective, the trial court was well aware of the ongoing litigation related to Weeping Ridge North and its potential financial implications. The trial court's decision to decline to reopen evidence was not an abuse of discretion.

Ms. Gardner's assertion that the trial court did not consider the parties' economic circumstances at the time the division of property was to become effective lacks merit. Aside from an error in the parties' incomes on child support worksheet, Ms. Gardner fails to show that the trial court was not thorough in its understanding of the parties' economic circumstances.

### B. NEGATIVELY PRODUCTIVE CONDUCT

Ms. Gardner next posits the trial court erred by failing to consider Mr. Rodriguez's alleged negatively productive conduct with regard to the economic loss related to Weeping Ridge North. We disagree.

"Washington courts recognize that consideration of each party's responsibility for creating or dissipating marital assets is relevant to the just and equitable distribution of property." *In re Marriage of Williams*, 84 Wn. App. 263, 270, 927 P.2d 679 (1996). "The trial court has discretion to consider whose 'negatively productive conduct' depleted the couple's assets and to apportion a higher debt load or fewer assets to the wasteful marital partner." *Id*. (quoting *In re Marriage of Clark*, 13 Wn. App. 805, 809, 538 P.2d 145 (1975).

12

At the time of the dissolution trial, Ms. Gardner had already filed a separate lawsuit against Mr. Rodriguez related to Weeping Ridge North. During the dissolution trial, the court was instructed not to make fault findings as to Weeping Ridge North so as not to create any potential collateral estoppel arguments in other pending matters. The trial court inquired of Ms. Gardner's counsel:

> THE COURT: My question is this, if in fact as the parties seem to agree that there is an identity of issues sufficient *that your client doesn't want me to enter findings about Weeping Ridge North that suggests to me that her position is abide by these other two resolutions.* The administrative hearing resolution and the fraud case.
>
> [Ms. Gardner's Attorney]: Right.
>
> . . . .
>
> [Ms. Gardner's Attorney]: . . . *Because my focus on the briefing was collateral estoppel, like none of these have been decided yet*, so we still—I don't think they stop you, however, that being said, they do share identity of issues. And I cannot come to this court and say they don't. [T]hey obviously do.

RP (July 30, 2021) at 240, 242 (emphasis added).

Ms. Gardner now argues that the trial court should have taken Mr. Rodriguez's alleged negatively productive conduct into consideration when it distributed the property. However, the invited error doctrine "prohibits a party from setting up an error at trial and then complaining of it on appeal." *Hymas v. UAP Distrib., Inc.*, 167 Wn. App. 136, 148, 272 P.3d 889 (2012). The invited error doctrine applies when a party "'takes affirmative and voluntary action that induces the trial court to take an action that party later

challenges on appeal.'" *Id.* (quoting *Lavine v. Chase, Haskell, Hayes & Kalamon PS*,

112 Wn. App. 677, 681, 50 P.3d 306 (2002)).

Ms. Gardner is precluded from requesting the trial court refrain from making fault

findings related to Weeping Ridge North and later complaining the court failed to find

that Mr. Rodriguez's negatively productive conduct caused economic loss to Weeping

Ridge North. Given Ms. Gardner's explicit request that the trial court refrain from

entering findings related to the Weeping Ridge North loss, the court did not abuse its

discretion when it did not assign fault to Mr. Rodriguez for his alleged negatively

productive conduct.

### C. PATENT DISPARITY IN ECONOMIC CIRCUMSTANCES

Finally, Ms. Gardner argues that the trial court abused its discretion in dividing the

parties' property and debts because the distribution resulted in a patent disparity in the

economic circumstances of each party.

As a threshold issue, Mr. Rodriguez argues that any error in the property

distribution was invited by Ms. Gardner because she was awarded the property she

requested. Ms. Gardner responds that she requested one of the businesses be awarded to

her, and that she asked for Mr. Rodriguez to pay the mortgage debt on the rental

properties. Ms. Gardner is correct. The record reflects that Ms. Gardner requested the

Grande Manor business be awarded to her and that, though she did ask for the rental

properties, Mr. Rodriguez pay the mortgage debts associated with those properties. Thus, Ms. Gardner did not invite the alleged error.

Here, the trial court was tasked with making credibility and value determinations on various assets that were assigned vastly conflicting values by the parties. Ultimately, Ms. Gardner was awarded $6,297,938 of the assets while Mr. Rodriguez was awarded $6,252,393. Ms. Gardner does not argue that the court's value determinations were erroneous, rather she contends the distribution resulted in a patent disparity in the parties' economic circumstances.

Though on its face the property distribution appears to be equitable, Ms. Gardner argues that the economic disparity between the parties is extreme and remand is warranted. She argues that Mr. Rodriguez's income, after receiving all of the businesses, is substantial, while her income is negative $5,000 per month due to her being awarded the rental property business that operates at a loss.

Ms. Gardner was awarded the majority of the parties' nonbusiness-related real property assets, while Mr. Rodriguez was awarded the parties' four businesses, Weeping Ridge Estate, Weeping Ridge West, Weeping Ridge North, and Grande Manor. The parties were also instructed to pay off any lien in the name of the other person, individually or as part of the marital community, within two years. The rental properties Ms. Gardner was awarded were valued at a total of $7,316,500 and were subject to a total of $1,151,325 in mortgage debt.

15

The parties' 2019 tax returns reflect that the rental property business, IPRI, lost $61,899 over the year. On the other hand, the same tax returns showed the couple's other four businesses generated almost $600,000 per year in income.[5] *See* Ex. 124, 125.[6] According to the parties' previous tax returns, the court's distribution left Ms. Gardner with a negative monthly cashflow while leaving Mr. Rodriguez with at least double digit monthly cashflow. Thus, on its face, the court's distribution appears to have resulted in a patent disparity in the parties' economic circumstances.

However, Ms. Gardner's argument fails for one reason—the past revenue and profits, or lack thereof, from each of the businesses was considered by the business valuation experts and forensic economist when they assigned values to the businesses. Stated another way, the profits or losses of the businesses are not independent from the businesses' valuations. Ms. Gardner does not assign error to values assigned to the businesses, rather that the distribution was unfair. Awarding Ms. Gardner $6,297,938 of

---

[5] According to the court's income calculations for the parties, the businesses awarded to Mr. Rodriguez generated far more income than the tax returns reflect. The court noted "I think it's remarkable the amount of money that's gone through [the parties'] hands in 10, 12 years. Some of that was some—perhaps some financial hijinks *or playing fast and loose with the Internal Revenue Code*." RP at 1951 (emphasis added).

[6] Admittedly, with the potential loss of Weeping Ridge North, the income from the businesses will be lower. However, even without Weeping Ridge North, Mr. Rodriguez's monthly income is still well above that of Ms. Gardner's.

16

the parties' property and Mr. Rodriguez $6,252,393 of the parties' property was not a manifest abuse of discretion.

We affirm the trial court's distribution of the parties' property and debts.

II.  THE PARTIES' INCOMES

Ms. Gardner argues that the court abused its discretion in assigning her income from a business awarded to Mr. Rodriguez, for imputing $10,000 of monthly income to her, and for the resulting order related to the children's postsecondary educational expenses.

In response, Mr. Rodriguez argues that any error in calculating the parties' incomes was harmless because Ms. Gardner was not ordered to pay child support even though three of the parties' four children resided with him.  We disagree the error was harmless.  First, Mr. Rodriguez does not appeal the trial court's failure to order Ms. Gardner to pay child support.  Secondly, as discussed above, the court mistakenly assigned $47,935 per month of income to Ms. Gardner, presumably for the Grande Manor business that was awarded to Mr. Rodriguez.  Because the income from Grande Manor was mistakenly assigned to Ms. Gardner, it was not included in calculating Mr. Rodriguez's income.  Thus, Ms. Gardner's income should have been reduced by $47,935 and Mr. Rodriguez's increased by the same amount.

Ms. Gardner next argues that the trial court's incorrect income calculation created

an error in the parties' obligations for the children's postsecondary educational expenses.

The child support provision in the final divorce order reads:

> Should any of the children elect to pursue higher education after high
> school, the child shall be responsible for twenty percent (20%) of the total
> cost thereof. *The parents shall share the remaining eighty percent (80%) at
> the ratio their incomes bear to one another*, with all payments made
> directly to the school. Any monies paid directly to a/the child by a parent
> are nonreimbursable and shall be considered a gift. Each parent shall
> assure that appropriate motor vehicle liability insurance is in place for any
> child driver residing primarily in that parent's home, or driving a vehicle
> owned by or primarily garaged at that parent's home.

CP at 2946 (emphasis added). Because the parties' incomes were incorrectly calculated,

the resulting ratios derived from their incomes for the children's postsecondary

educational expenses are incorrect. When the parties' incomes are corrected on remand,

obligation of each party for the children's postsecondary educational expenses will also

necessarily be corrected.

Finally, Ms. Gardner argues that the trial court erroneously imputed $10,000 per

month of income to her, finding her to be voluntarily unemployed. RCW 26.19.071(6)

requires the court to "impute income to a parent when the parent is voluntarily

unemployed or voluntarily underemployed." The court must determine whether the

parent is voluntarily underemployed or unemployed based on the parent's

> [a]ssets, residence, employment and earnings history, job skills, educational
> attainment, literacy, health, age, criminal record, dependency court
> obligations, and other employment barriers, record of seeking work, the

> local job market, the availability of employers willing to hire the parent, the prevailing earnings level in the local community, or any other relevant factors.

RCW 26.19.071(6).  Moreover, "[i]ncome from self-employment, rent, royalties, contracts, proprietorship of a business, or joint ownership of a partnership or closely held corporation" is to be included in the parent's gross monthly income calculation.  RCW 26.19.071(3)(u).

Here, the trial court imputed Ms. Gardner $10,000 per month of income, finding her to be "voluntarily unemployed since 2017."  CP at 2933.  The court noted that Ms. Gardner has a bachelor's degree in nursing and that she chose to terminate her nurse practitioner program at Gonzaga University "without any substantial justification for doing so, such that she would likely have completed the program and be working in that field had she chose to do so."  CP at 2933.

Ms. Gardner argues that the court's imputation of income to her was erroneous because she was awarded a multitude of rental properties and that the court failed to make findings regarding the amount of work or time involved in managing the array of rental properties or what each rental property generated in income.  Pursuant to RCW 26.19.071(3)(u), the court was required to calculate and include Ms. Gardner's rental income and any income derived from self-employment assuming she manages the rental properties herself.  The court correctly noted Ms. Gardner's professional degrees and ability to work.  Depending on the amount of hours Ms. Gardner devotes to managing her

rental properties, and the income derived therefrom, the trial court may still find her to be voluntarily underemployed.

Ms. Gardner further argues that even if the trial court correctly imputed income to her, $10,000 per month was excessive given that the top 10 percent of registered nurses in Eastern Washington only earn $108,420 annually. We agree that the trial court abused its discretion when it imputed to Ms. Gardner the highest level of income available to a registered nurse in eastern Washington. Unlike the highest income earners, Ms. Gardner's employment history in nursing is limited to working in vulnerable adult and child care facilities. Further, given the domestic violence allegations against Ms. Gardner, she is unable to work in those positions.

III. MAINTENANCE

Ms. Gardner argues that the trial court erroneously considered a debt repayment as a maintenance award, thereby abusing its discretion. We agree.

We review a trial court's award of spousal maintenance for an abuse of discretion. *In re Marriage of Mueller*, 140 Wn. App. 498, 510, 167 P.3d 568 (2007). We review the trial court's factual findings for substantial evidence. *In re Marriage of Rockwell*, 141 Wn. App. 235, 242, 170 P.3d 572 (2007). Unchallenged findings of the trial court are treated by this court as verities on appeal and our review will be limited to determining whether findings support the conclusions of law. *In re Application of*

*Santore*, 28 Wn. App. 319, 323, 623 P.2d 702, *review denied*, 95 Wn.2d 1019 (1981);

*McIntyre v. Fort Vancouver Plywood Co.*, 24 Wn. App. 120, 123, 600 P.2d 619 (1979).

Under RCW 26.09.090, the amount and duration of maintenance is limited by the requirement that the award be just in light of the relevant factors. Those factors include, but are not limited to: (1) the financial resources of the party seeking maintenance; (2) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment; (3) the standard of living established during the marriage; (4) the duration of the marriage; (5) the age, physical and emotional condition, and financial obligations of the party seeking maintenance; and (6) the ability of the party from whom maintenance is sought to meet his or her needs and financial obligations. "Nothing in RCW 26.09.090 requires the trial court to make specific factual findings on each of the factors listed in RCW 26.09.090(1). The statute merely requires the court to consider the listed factors." *In re Marriage of Mansour*, 126 Wn. App. 1, 16, 106 P.3d 768 (2004).

The use of the terms "alimony," "maintenance payment," or "property award" does not necessarily mean that the award must be treated as such. *In re Marriage of Hadley*, 88 Wn.2d 649, 658, 565 P.2d 790 (1977). "There is no magic in the use of these terms." *Id*. Instead, "[o]ur concern is with the fairness of the award as determined by those factors set out in . . . RCW 26.09.090." *Id*. Additionally, "maintenance is . . . a

21

flexible tool by which the parties' standard of living may be equalized for an appropriate period of time." *Washburn*, 101 Wn.2d at 179.

Ms. Gardner challenges the award of maintenance to her—or, as she argues, the lack thereof. The trial court's order regarding spousal maintenance provides:

> In this unusual and protracted proceeding, the marital community incurred substantial fees and costs as the result of the appointment of a Receiver. *It is appropriate that an amount approximating one half of the costs of the receivership be restored to* [*Ms. Gardner*] *in the term of maintenance, less payments to her attorney and experts. The maintenance will also serve as at least a temporary replacement for the stipend paid each party during the pendency of this matter and acknowledges the disparity in income earning capacity resulting from property distribution.* Therefore, the Court will order that [Mr. Rodriguez] pay [Ms. Gardner] the sum of Fifteen Thousand and No/100 Dollars ($15,000.00) per month for a period of twenty (20) months, beginning November 1, 2021. Each payment shall be due by the 1st of the month until paid in full. Spousal support will terminate on the death of either party or [Ms. Gardner]'s remarriage.

CP at 2945 (emphasis added). Absent from the trial court's findings is any consideration of the factors contained in RCW 26.09.090, other than arguably Mr. Rodriguez's ability to pay.

The trial court stated that the $300,000 paid over 20 months was a maintenance award. However, the evidence established it was actually a repayment of the debt incurred by Ms. Gardner associated with the costs of the receivership. The trial court properly recognized the disparity in each party's earning capacity that resulted from the property distribution, yet labeling the debt repayment as maintenance does little to remedy the disparity. The spousal maintenance award, or lack thereof, is not just in light

of the massive disparity in the parties' incomes that resulted from the property distribution. Remand is necessary for the trial court to consider, in light of the factors of RCW 26.09.090, whether an award of maintenance is appropriate and, if so, the amount and duration of Mr. Rodriguez's obligation.

IV.  ATTORNEY FEES

Ms. Gardner argues that the trial court abused its discretion when it failed to order Mr. Rodriguez to pay her attorney fees.

We review a court's ruling regarding attorney fees under RCW 26.09.140 for an abuse of discretion. *In re Marriage of Nelson*, 62 Wn. App. 515, 521, 814 P.2d 1208 (1991). A decision whether or not to award attorney fees is discretionary and neither party is entitled to "fees as a matter of right." *In re Marriage of Terry*, 79 Wn. App. 866, 871, 905 P.2d 935 (1995). Instead, the court determines "whether one party has a need and the other party has the ability to pay" and then determines whether or not to award either party fees. *Id*. RCW 26.09.140 authorizes the court, after considering the financial resources of both parties, to order a party to pay a reasonable amount to the other party for their attorney fees.

Here, the trial court ordered that each party be responsible for their own attorney fees. The court noted that a temporary order "provided that attorneys' fees and costs would be paid from surpluses accrued in the neutral account during the pendency of this matter." CP at 2925. The court further noted that "[w]hile each party claims to owe

additional attorneys' fees as of time of trial, each party will have substantial income and assets to address attorneys' fees in the future. No further attorneys' fees shall be ordered in this matter." CP at 2933.

Ms. Gardner asserts the court should have awarded her attorney fees because Mr. Rodriguez had ample monthly income while she was left with a negative monthly cashflow. Mr. Rodriguez responds that Ms. Gardner was well funded during the dissolution proceedings and was awarded the majority of the parties' property.

The court's finding that "each party will have substantial income and assets to address attorney fees in the future" is not supported by substantial evidence because, as discussed in the preceding sections, Ms. Gardner's income was incorrectly calculated. The record reflects that both parties used assets from business distributions to pay their attorney fees during the dissolution proceedings. Ex. 81, 83. While Ms. Gardner was technically awarded the majority of the parties' property, she left the marriage with the parties' only business that potentially produced a negative monthly income. Meanwhile, Mr. Rodriguez was awarded all of the parties' income producing assets. Thus, the trial court abused its discretion when it did not order Mr. Rodriguez to pay some or all of Ms. Gardner's attorney fees.

Because we are remanding to the trial court to recalculate the parties' incomes and for the trial court to consider an award of spousal maintenance, the trial court may reassess Ms. Gardner's request for attorney fees.

ATTORNEY FEES ON APPEAL

Ms. Gardner requests her attorney fees on appeal pursuant to RAP 18.1 and

RCW 26.09.140. Ms. Gardner contends that, due to the economic disparity between she

and Mr. Rodriguez, she has a need for assistance with paying her attorney fees and Mr.

Rodriguez has an ability to pay. Mr. Rodriguez counters that Ms. Gardner lacks the need

for assistance.

RAP 18.1 allows us to award attorney fees on appeal if authorized by applicable

law. RCW 26.09.140 provides for attorney fees on appeal:

> The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for reasonable attorneys' fees or other professional fees in connection therewith, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or enforcement or modification proceedings after entry of judgment.
> *Upon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs.*

(Emphasis added.) "In exercising discretion under this statute, we consider the arguable

merit of the issues on appeal and the parties' financial resources." *In re Marriage of*

*Raskob*, 183 Wn. App. 503, 520, 334 P.3d 30 (2014). "A party must timely file a

financial declaration for his or her resources to be considered." *Id*.

Ms. Gardner has filed with this court an affidavit of financial need as required by

RAP 18.1(c). However, the trial court is better suited for deciding whether attorney fees

should be ordered and, if so, the amount. We lack the benefit of accurate income determinations for the parties, whether Ms. Gardner will be awarded maintenance and, if so, the amount and duration of the maintenance, and whether Ms. Gardner will be awarded attorney fees at the trial court level. Pursuant to RAP 18.1(i), on remand the trial court will determine whether an award attorney fees is warranted.

## CONCLUSION

We affirm the trial court's distribution of the parties' property and debts. We remand for the trial court to correctly calculate the parties' incomes for purposes of their obligations for the children's postsecondary educational expenses and to decide whether an award of maintenance is appropriate. Lastly, we remand for the trial court to decide whether Mr. Rodriguez should be ordered to pay some or all of Ms. Gardner's attorney fees.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Cooney, J.

WE CONCUR:

Lawrence-Berrey, A.C.J.

Staab, J.

26